SMITH et al. v. BONIFER et al.

(Circuit Court, D. Oregon. October 20, 1904.)

No. 2,683.

1. INDIANS—WRONGFUL ALLOTMENT OF LANDS—RECOVERY BY HEIR OF PERSON ENTITLED TO ALLOTMENT.

Where a selection of lands for allotment has been made by an Indian, and his right to their allotment to him has attached, the act of the allotting commissioners in wrongfully allotting them to another cannot operate to cut off the heirs of the person entitled to the allotment, who, under the act under which the allotment was made, succeed to his interest.

In Equity. Suit by Indians to recover lands allotted to another. On demurrer to bill.

R. J. Slater and J. T. Hinkle, for complainants.
John H. Hall, U. S. Atty., for defendants.

BELLINGER, District Judge. Under the act of Congress of March 3, 1885, 23 Stat. 341, providing for allotment of lands of the Umatilla Indian reservation to Indians residing thereon, the plaintiff Philomme Smith, a full-blooded Indian woman, and a member of the Walla Walla tribe of Indians, residing on such reservation with her family, made, as the head of such family, selections of lands subject to allotment for her children as follows: For George Smith, the N. E. ¼ of N. W. ¼ of section 29; for Sophia Smith, the S. E. ¼ of N. W. ¼ of section 29; for Maggie Smith, the N. W. ¼ of N. E. ¼ of section 29; for Lura Smith, the S. W. ¼ of N. E. ¼ of section 29; for Charles Smith, the N. E. ¼ of N. E. ¼ of section 29; for Janie Smith, the S. E. ¼ of N. E. ¼ of section 29. James Smith, a son of said Philomme Smith, over 18 years of age at said time, selected for himself the W. ½ of the N. W. ¼ of section 29. It is alleged that the land so selected for George, Sophia, Maggie, Lura, Charles, and Janie, and that selected by James, was at the time and had been long occupied by said Philomme and her family, who had taken possession of, settled upon, inclosed, and extensively improved the same, with the consent of the head men of the tribe; that notwithstanding such settlement, occupancy, and improvements, and the selections so made, the allotting commissioners disregarded such selections, and wrongfully allotted said lands to others, as follows: The lands selected for said Charles, Maggie, Janie, and Lura were allotted to Martha Herbert, now Martha Bonifer,

one of the defendants; that selected for said George and Sophia, and that selected by said James, were wrongfully allotted to Margaret Bourner, now deceased; that such allotments were made while the plaintiff Philomme Smith and her said family were in the possession of such lands and had the same inclosed and improved as already stated, and that the allottees had made no improvements whatever thereon; that after such wrongful allotment the Secretary of the Interior caused the said plaintiff and her children to be dispossessed of said lands and of their improvements, to their damage in the sum of $5,000; that said allottees had actual knowledge of the possession and improvement of such lands by plaintiffs, and of the selections made by them and in their behalf; that, after the said allotments were made, the said George, Sophia, and Lura, all being minor children, died, leaving as their only heir their father, the complainant F. A. Smith, who claims to have succeeded to the rights and interests of said deceased minors in the selections made in their behalf; that about May 12, 1897, James Smith died, leaving as his only heir Elizabeth Smith, a minor aged eight years, in whose behalf, as well as that of Charles, Maggie, and Janie, all minors, Philomme Smith brings this suit for them as next friend; that, after the allotments were made, Margaret Bourner died, leaving as her heirs Myrtle, Violet, and Edwin, minors; that Ed Bourner, one of the defendants, was the husband of said Margaret and father of said minors, and he claims some interest in said land, and is in possession of the same.

Upon these facts it is clear that at least as to Charles, Maggie, and Janie Smith, for whom Philomme brings this suit, the court has jurisdiction to grant the relief prayed for. There is question as to whether the plaintiff F. A. Smith has succeeded to the interests of the deceased children. The act in question (the special act for allotments to Indians on the Umatilla reservation) provides that:

"The President shall cause patents to issue to all persons to whom allotments of lands shall be made under the provisions of this act, which shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state of Oregon, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: provided, that the law of alienation and descent in force in the state of. Oregon shall apply thereto after patents have been executed, except as herein otherwise provided."

The intention of the act, that the allottee's interest, when ascertained, shall descend upon his death to his heirs, is without reference to the proviso that the law of alienation and descent shall apply after patents issue (referring, presumably, to the patent to be issued at the expiration of the 25 years during which the trust continues, although it is not apparent why it should have been thought necessary to provide specially for the descent and alienation of these lands after the expiration of the trust, and when the title of the allottee who is made a citizen becomes absolute). The right of succession in the heir is not created by the patent. The patent is a mere declaration of trust, in which

the intention that the heir shall take in the right of the allottee is shown. When a selection has been made and the right to an allotment has attached, the act of the allotting commissioners in wrongfully allotting the lands to another cannot operate to cut off the heir of the person entitled to the allotment. The right of the heir depends, not upon what was done by the allotting department, but upon what ought to have been done. "It is a well established principle that when an individual, in the prosecution of a right, does everything which the law requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him." Lytle v. The State of Arkansas, 9 How. 333, 13 L. Ed. 153. It is a familiar principle that "where one offers to do everything upon which the acquisition of a right depends, and is prevented by the fault of the other side, his right shall not be lost by his failure." The Yosemite Valley Case, 15 Wall. 91, 21 L. Ed. 82.

The demurrer is overruled.