## SMITH et al. v. UNITED STATES et al.

### (Circuit Court, D. Oregon. December 23, 1905.)

1. INDIANS—SUIT RESPECTING ALLOTMENT OF LANDS—JURISDICTION TO APPOINT RECEIVER.

> Under Act Aug. 15, 1894, c. 290, 28 Stat. 286, amended by Act Feb. 6, 1901, c. 217, 31 Stat. 760, which confers on the Circuit Courts of the United States "jurisdiction to try and determine any action, suit or proceeding arising within their respective jurisdictions involving the right of any person in whole or in part of Indian blood or descent to any allotment of land under any law or treaty," such courts have power to appoint a receiver for the lands involved in such a suit, where a proper showing therefor is made.

2. SAME—GROUNDS FOR APPOINTMENT OF RECEIVER.

> The Circuit Court will not appoint a receiver in a suit to determine the right to an allotment of Indian lands to take charge of and lease such lands, where the Secretary of the Interior, who is given by statute supervisory power of such leasing, has given instructions that no action shall be taken in respect to leasing the lands in dispute until the rights of the respective claimants have been determined.

On Motion for Appointment of Receiver.

R. J. Slater and J. T. Hinkle, for plaintiffs.

W. C. Bristol, U. S. Atty.

T. G. Hailey, for defendants.

WOLVERTON, District Judge. This is an application to the court, through motion of the plaintiffs, to have a receiver appointed to take charge of the real property in dispute and the rents accruing therefrom, and to hold the same subject to the further order of the court. The plaintiffs are Indians, who allege that they are entitled to have allotments made to them of certain lands described in the complaint, situate upon the Umatilla Indian Reservation, which were wrongfully allotted to the defendants and their predecessors; the purpose of the suit being to determine who of the parties plaintiff or defendant are rightfully entitled to the allotments. See Smith v. Bonifer (C. C.) 132 Fed. 889. The lands are now in the possession of the defendants, who are assuming to lease the same, and are collecting and appropriating the rents therefrom.

The government contests the right of plaintiffs to the appointment of such receiver, principally on two grounds: First, that the court is not authorized, by the act providing for suit or action in the premises, to appoint a receiver; and, second, that the appointment of such receiver would prove unavailing in the present case, because the Secretary of the Interior has signified his intention of taking no further action respecting the leasing of the lands involved until the rights of the respective claimants have been determined.

By Act Cong. Feb. 6, 1901, c. 217, 31 Stat. 760, which is amendatory of Act Aug. 15, 1894, c. 290, 28 Stat. 286–305, the Circuit Courts of the United States are accorded "jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty; * * * and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him." The language quoted is the same as that employed in the act of 1894, supra.

This statute has formerly been construed as extending to the Circuit Courts jurisdiction in cases of this nature. Smith v. Bonifer, supra; Patawa v. United States, 132 Fed. 893; and Hy-yu-tse-mil-kin v. Smith, 194 U. S. 401, 24 Sup. Ct. 676, 48 L. Ed. 1039. In Beck v. Flournoy Live Stock Co., etc., 65 Fed. 30, 12 C. C. A. 497, a circuit court exercised the authority to issue an injunctive writ, both in its preliminary and final stages. While the case was reversed on appeal, it seems not to have been questioned that the jurisdiction of the court was competent for these purposes in a proper case. See, also, United States v. Flournoy Live Stock Co., etc. (C. C.) 69 Fed. 886. And in United States v. Flournoy Live Stock Co., etc. (C. C.) 71 Fed. 576, it was held that the government had the right to invoke the aid of the court to restrain persons from procuring leases from the Indians, other than such as are authorized by law, and in virtue of the control of the Indian Department.

The remedy sought by the appointment of a receiver in the present case is provisional in its nature, like a preliminary or interlocutory injunction, and is designed to preserve the status quo of the parties until the final determination of the cause. The exclusively equitable remedies embrace, says Mr. Pomeroy:

"Those remedies which are wholly ancillary or provisional; which do not either directly or indirectly affect the nature of any primary right, but are simply means and instruments by which primary rights may be more efficiently preserved, protected, and enforced in judicial proceedings. This class includes the ordinary preventive injunction, receivers, and interpleader." 1 Pomeroy's Equity Jurisprudence, § 171.

Congress having given to the circuit court ample jurisdiction to determine all disputes touching the allotment of lands among the Indians upon reservations, I am of the opinion that it was also the purpose and intendment of the statute to accord jurisdiction in all ancillary and provisionary matters, requisite to conserving to the parties all just rights and privileges pertaining to a rightful allotment, and that such jurisdiction extends to and comprises the power and authority for the appointment of a receiver in a case like the present. I hold, therefore, that the first ground of objection, going to the jurisdiction of the court, is not well assigned. The second ground, however, going to the exercise of such jurisdiction in the present case, is well taken.

Act Cong. March 3, 1885, c. 319, 23 Stat. 340, 341, relating to the allotment of lands in severalty to the Indians residing upon the Umatilla Reservation, provides, among other things, that:

"The President shall cause patents to issue to all persons to whom allotments of lands shall be made under the provisions of this act, which shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state of Oregon, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever."

A later act (Act Feb. 8, 1887, c. 119, § 4, 24 Stat. 388, 389), general in its scope, contains a like regulation, and provides further:

"That the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

By a yet later act, amendatory of this one, it is still further provided:

"That whenever it shall be made to appear to the Secretary of the Interior that, by reason of age or other disability, any allottee under the provisions of said act, or any other act or treaty can not personally and with benefit to himself occupy or improve his allotment or any part thereof the same may be leased upon such terms, regulations and conditions as shall be prescribed by such Secretary, for a term not exceeding three years for farming or grazing, or ten years for mining purposes." Act Feb. 28, 1891, c. 383, § 3, 26 Stat. 794–795.

The regulation is re-enacted June 10, 1896. See Act June 10, 1896, c. 398, 29 Stat. 321–340.

The first two statutes above alluded to were designed as limitations upon the power or authority of the Indians to deal with the lands by grant or contract, which were imposed for their protection against "the greed and superior intelligence of the white man." Beck v. Flournoy, supra. The later statutes indicate unmistakably the policy of the government respecting the allotments and the Indian allottees entitled thereto. The Secretary of the Interior is given appropriate and ample authority to exercise a salutary supervision over the leasing of the lands thus allotted, for the protection and welfare of the Indians holding them, and to this end has heretofore acted in the discharge of the function accorded him. United States v. Fournoy Live Stock Co., etc., supra. The policy, therefore, has been put into practical effect, and as it respects the lands severally allotted upon the Umatilla Reservation, the Secretary has, I am informed, uniformly exercised this supervisory control.

Now, by the affidavit showing cause for the appointment of a receiver herein, it is averred that the Department of Indian Affairs will recognize the receiver, and will authorize and approve leases made by him; but by a recent dispatch from the Secretary to the Secretary of the Interior, the court is informed that the Umatilla agent, or his clerk in charge, was, as early as November 21, 1896, instructed that no action would be taken relative to the leasing of the land involved until the rights of the respective claimants had been determined. This instruction is authoritative, and the purpose of the government with respect to these lands and the contention of claimants is obvious; that is, not to act further in the premises until the dispute is ended.

It is stated as a principle of law, in Blondheim v. Moore, 11 Md. 365 (a case cited in 3 Pomeroy's Equity Jurisprudence, under section 1331):

"That there is no case in which the court appoints a receiver merely because the measure can do no harm."

Coupling this with another principle, well settled, that courts will not do a vain or useless thing, it at once becomes apparent that a receiver ought not to be appointed in the present case. The court has no positive assurance that such appointment would help any one at any stage of the proceeding. The motion will therefore be denied.