## UNITED STATES v. FAIRBANKS.

### SAME v. WARREN.

(Circuit Court of Appeals, Eighth Circuit. June 3, 1909.)

#### Nos. 2,926, 2,927.

1. INDIANS (§ 27*)—LANDS—ACTION TO DETERMINE RIGHT TO ALLOTMENT.

In an action brought by a person claiming the right to an allotment of land on an Indian reservation against the United States to establish such right, as authorized by Act Feb. 6, 1901, c. 217, 31 Stat. 760, the jurisdiction of the court is not restricted to a determination of the right of the plaintiff to any allotment; but, where a particular tract is claimed, the right of any adverse claimant may also be litigated, and for that purpose he may, and should, be joined as a party defendant.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 27.*]

2. INDIANS (§ 13*)—LANDS—CONSTRUCTION OF STATUTE AUTHORIZING ALLOTMENT.

Under the general Indian allotment act of 1887 (Act Feb. 8, 1887, c. 119, 24 Stat. 388), a continuing power was vested in the President, which is not exhausted by the first order for allotments; but others may be thereafter made from time to time in his discretion.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

3. INDIANS (§ 13*)—LANDS—ALLOTMENTS IN SEVERALTY.

The fact that a member of an Indian tribe was born after the passage of the general Indian allotment act of 1887 (Act Feb. 8, 1887, c. 119, 24 Stat. 388), or of the Nelson act of 1889 (Act Jan. 14, 1889, c. 24, 25 Stat. 642), does not exclude such person from the right to an allotment under either of such acts.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

4. INDIANS (§ 13*)—LANDS—ALLOTMENTS IN SEVERALTY.

The effect of the Steenerson act (Act April 28, 1904, c. 1786, 33 Stat. 539), was to abrogate the limitation placed by the ruling of the department on the prior Indian allotment acts, excluding from their operation land chiefly valuable for its timber, and as soon as it took effect any Indian entitled to an original allotment under the prior acts had the right to select the same from any unappropriated lands, and was not required to wait until additional allotments were made under the Steenerson act.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

Appeal from the Circuit Court of the United States for the District of Minnesota.

These suits involve conflicting claims to two 80-acre allotments of land on the White Earth Indian reservation under the general allotment act (Act Feb. 8, 1887, c. 119, 24 Stat. 388), the Nelson act (Act Jan. 14, 1889, c. 24, 25 Stat. 642), and the Steenerson act (Act April 28, 1904, c. 1786, 33 Stat. 539). On the 29th of June, 1904, the plaintiffs, Annie Fairbanks and Edward L. Warren, presented to the Indian agent in charge of the White Earth reservation applications for allotments of the land in question as "additional" allotments under the Steenerson act. The agent declined to receive the applications upon two grounds: First, because the qualified residents on the reservation had not yet all received their "original" allotments under the acts of 1887 and 1889; second, because the preliminary work necessary for the making of allotments under the Steenerson act had not yet been done. For reasons which are fully explained in the opinion of this court in Woodbury v. United States, 170 Fed. 302, these applications were premature, and created no right or interest in the land. August 8, 1904, Louis and Alice Mooers, minors, ap-

plied by their father for an allotment of the same lands as original allotments under the acts of 1887 and 1889. Their applications were accepted and filed. April 24, 1905, arrangements having been completed for the allotment of "additionals" under the Steenerson act, the plaintiffs again presented their applications for the allotment of the lands in question under that statute. These applications were also received by the agent of the reservation. Thus two separate sets of applications were accepted at the same office for the same tracts of land. The rights of the parties in this suit depend upon which of the filings has priority. After much vacillation the Interior Department, by decision of the Secretary of the Interior dated May 13, 1907, sustained the claims of the Mooers, and directed that the lands be allotted to them. The present suits were afterwards brought under Act Feb. 6, 1901, c. 217, 31 Stat. 760, for a determination in court of complainants' rights. Decrees were entered in their favor, and the present appeals are brought to review those decisions.

R. J. Powell (Charles C. Houpt, U. S. Atty., on the brief), for the United States.

George B. Edgerton, for appellees.

Before ADAMS, Circuit Judge, and RINER and AMIDON, District Judges.

AMIDON, District Judge (after stating the facts as above). A preliminary question is raised by the government as to the jurisdiction of the court to deal with the rights of the Mooers in these suits. It is urged that under Act Aug. 15, 1894, c. 290, 28 Stat. 305 as amended by Act Feb. 6, 1901, c. 217, 31 Stat. 760, the court has jurisdiction only to determine whether the plaintiff is entitled to any allotment of land on the reservation, but has no jurisdiction to determine conflicting rights between different applicants for allotment of the same lands. This contention is based upon the provision of the statute which reads as follows:

"In said suit the parties thereto shall be the claimant, as plaintiff, and the United States as party defendant."

We cannot give to this language the effect claimed by counsel for the government. An earlier part of the statute declares that all persons who have or claim a right to any allotment of land upon an Indian reservation—

"may commence and prosecute or defend any action, suit or proceeding in relation to their right thereto in the proper Circuit Court of the United States."

This language clearly extends the jurisdiction to the defense of rights as well as their assertion. The object of requiring the United States to be made a defendant is that it may exercise that supervision over allotments of land which is necessary to protect the rights of Indians. It seems to have been the practice to make adverse claimants parties with the government. Smith v. Bonifer (C. C.) 132 Fed. 889; Patawa v. United States (C. C.) 132 Fed. 893; Parr v. U. S. (C. C.) 132 Fed. 1004; Smith v. United States (C. C.) 142 Fed. 225; Waldron v. U. S. (C. C.) 143 Fed. 413. Of course, if the controversy is wholly between the United States and the Indian, involving only the question of his right to any allotment, then the United States would be the only party defendant. Sloan v. U. S. (C. C.) 118 Fed. 283.

The Mooers children are not made parties. We entertain a serious

doubt as to whether the court could properly proceed to judgment in these cases and render decrees which so seriously affected their rights without their being made defendants. Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499. But, as that question is not raised by counsel, we pass it by.

In the pleadings no issue whatever is raised as to the capacity of the Mooers children to take an original allotment of land upon the reservation. No evidence was adduced upon that subject. The trial court, however, ascertained from their applications that the children were, respectively, 7 and 9 years of age, and reached the conclusion that, since they must have been born subsequent to the date on which the acts of 1887 and 1889 took effect, they could not be entitled to allotments under those statutes. This was the principal ground of its decision adjudging their allotments to be void. We find nothing in the statutes to support such a holding. The original act of 1889 fixes no definite time for the making of allotments. The first section looks to an indefinite period. It begins as follows:

"That in all cases where any tribe or band of Indians has been, or shall hereafter be, located upon any reservation created for their use, * * * the President of the United States be, and he is hereby authorized, whenever in his opinion any reservation or any part thereof, of such Indians, is advantageous for agricultural and grazing purposes, * * * to allot the land in said reservation in severalty to any Indians located thereon."

In specifying the amount to go to the different classes of allottees, the statute uses this language:

"To each other single person under eighteen years, now living, or who may be born prior to the date of the order of the President, directing an allotment of the lands embraced in any reservation."

The evidence in this case does not show the date of the order of the President directing that allotments be made under this statute. In our judgment, however, the making of one order did not exhaust the powers of the President. The statute vests a continuing power, and he could provide from time to time for allotments in favor of those born upon the reservation subsequent to the first order dealing with the subject, so long as there were lands of the reservation which had not been allotted. The statute submits the whole subject of the distribution of the lands embraced in the reservation, to the President, acting through the Interior Department. This view receives confirmation from the language used in section 3 of the Nelson act of 1889, as follows:

"And thereupon there shall, as soon as practicable, under the direction of said commissioners, be allotted lands in severalty to the Red Lake Indians on the Red Lake reservation, and to all other of said Indians on the White Earth reservation, in conformity with the act of 1887."

These statutes have been interpreted by the Interior Department as vesting a continuing power. In fact, the agent before commencing allotments under the Steenerson act, sent notice to all Indians whose names appeared upon the rolls, and who had not received original allotments, requiring them to make their selections, and specifying that if they failed to do so it would be the duty of the agent to act in their behalf. Such a notice was sent to the father of the Mooers children

in respect to their rights. The names of these children had been entered upon the rolls of the agency. They had received all the benefits of federal law, as members of the tribe, and the agent testified that his object in sending the notice was to call attention to their right to receive allotments, because he was of the opinion that they were entitled thereto. Their ages appeared upon the face of their applications, and have passed before the Commissioner of the General Land Office and the Secretary of the Interior. Those officers must have both become aware of the point raised by the trial court, and yet in their judgment the fact that the children were born subsequent to the date when the acts of 1887 and 1889 took effect, and possibly to the order of the President made for the purpose of carrying out those acts, did not seem to them to create any bar to their right to receive allotments. It having been the practice of the department to allot lands to Indians residing on the reservation, regardless of the time of their birth, it is quite likely that a decision adverse to that practice at this time would disturb titles long vested. The statutes relating to the White Earth reservation are wholly different from those controlling the allotment of the lands of the Five Civilized Tribes of Indian Territory. In that case a specific date was fixed, and it was provided that no Indian born upon the reservation subsequent to that date should be entitled to enrollment as a member of the tribe for the purpose of receiving an allotment. Hayes v. Barringer (C. C. A.) 168 Fed. 221. We are of the opinion that the court erred in holding that the Mooers children were not entitled to "original" allotments.

The acts of 1887 and 1889 were confined to lands that were "advantageous for agricultural and grazing purposes." The department, in construing this language, ruled that lands which were chiefly valuable for the pine timber growing thereon, did not come within the statute. Such lands had therefore been excluded from allotment. The Steenerson act abrogated this limitation. The agent was not aware of this feature of the Steenerson act, and for that reason held that the Mooers applications for the lands in question were invalid, and permitted the second filing. The trial court was also of the opinion that, inasmuch as the Steenerson act first gave a right to the allotment of pine lands, all persons claiming such allotments should be treated alike, and that no allotment of such lands could be made until the agency was ready to begin the work of making additional allotments under the Steenerson act. We think this ruling was erroneous. The regulation of the department excluding timber lands from the benefit of the statutes of 1887 and 1889 was itself questionable. A very large portion of the area of the United States at the present time devoted to agriculture was originally timber land. The effect of the Steenerson act abolishing the rule was to leave the lands of the reservation the same as if the regulation had never been in force. As soon as that act took effect any Indian who had not received his original allotment was entitled to select therefor any unappropriated land on the reservation. This was the interpretation of the Secretary of the Interior, and we think it accords with the provisions of the statute. It is true that allotments could not be made under the Steenerson act until the preliminary work necessary for that purpose had been completed. But the

Mooers children were not claiming under that statute. It related only to additional allotments. They were claiming original allotments under the acts of 1887 and 1889. Depending upon those statutes they were not obliged to defer the choosing of their allotments until the time fixed for making allotments under the Steenerson act.

Counsel for plaintiffs makes much of the fact that the father of the Mooers children had inclosed parcels of land with a fence, and had stated to his neighbors that he intended to claim those parcels as allotments for his children. The fact is, however, that he never made any application for those lands at the local land office, and in the absence of such applications the fencing in of the land gave the children no right or claim thereto. Their right to allotments must be determined by the proceedings which they took in the land office, and their applications for the lands here involved are the only proceedings of that character on their behalf.

The decrees must be reversed, with directions to enter decrees dismissing the bills upon the merits.