# HY–YU–TSE–MIL–KIN *v.* SMITH.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH
.CIRCUIT.

No. 209.   Submitted April 12, 1904.—Decided May 16, 1904.

An Indian woman, head of a family of the Walla Walla tribe, having asked under the act of March 3, 1885, 23 Stat. 340, for an allotment of land on which she resided and had made improvements, was refused on the ground that she was not on the reservation at the time of the passage of the act. She was directed to remove from the land which was allotted to another Indian who knew of her claims and improvements and who did not pay for her improvements or make any himself. Subsequently she was notified to make a selection but was not allowed to select the land formerly occupied but was told by the land officer that her selection of other lands would not prejudice her claim thereto. No patent was issued to her for the lands so selected. In an action brought by her against the allottee in possession of the lands originally selected by her,

*Held,* that it was not necessary under the act of March 3, 1885, that the individual members of the tribes mentioned in the act should be actually residing on the reservation at the time of the passage of the act, and that as her selection was prior to that of anyone else, she was entitled to the allotment originally selected and that her right thereto had not been lost by the selection of other lands.

*Held,* that in a contest between two Indians, each claiming the same land, the United States having no interest in the result is not a necessary party.

THIS is a suit in equity brought by the appellee, complainant below, in the Circuit Court of the United States, District of Oregon, against the appellant, to obtain the cancellation of an allotment of land made by the officers of the government to the appellant, on the Umatilla Indian reservation in Oregon in 1891, and to have the land allotted to her (the appellee). Issue being joined in the case, it was referred to a special examiner to ascertain and report the facts, and upon his report the Circuit Court gave judgment in favor of appellee, 110 Fed. Rep. 60, which was affirmed by the Circuit Court of Appeals, 119 Fed. Rep. 114, and the appellant thereupon appealed here.

The action was brought pursuant to the authority of an act of Congress (before amendment) passed in 1894, chapter 290. 28 Stat. 286, 305; amended, 31 Stat. 760. The right to the allotment claimed by the appellee is based on the act of March 3, 1885, chapter 319, 23 Stat. 340, and grows out of the treaty of June 9, 1855, between the United States and the Walla Walla and other Indian tribes, which treaty was ratified by the Senate, March 8, 1859, and proclaimed by the President, April 11, 1859. 12 Stat. 945.

A demurrer to the bill was filed by the defendant on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled and the defendant then answered denying many of the material allegations in the bill.

Witnesses were examined before the special examiner and he made a report and findings of facts, which findings were subsequently adopted by the Circuit Court and by the Circuit Court of Appeals. Among others the following facts were found: The appellee, Philomme Smith, is a full-blooded Indian woman, and at all times mentioned in the complaint was and is now a member of the Walla Walla band or tribe of Indians, and resides upon the Umatilla Indian reservation in the State of Oregon. The defendant (appellant) is also a full-blooded Indian residing upon the reservation. Pursuant to the authority granted by the above-mentioned act of March 3, 1885,

the President appointed commissioners for the allotment of lands on the Umatilla reservation, and the commissioners carried out the duty devolved upon them by the President under that act and completed the allotments on or about April 1, 1891, but refused at that time to make any allotment to the appellee, because of her absence (although but temporary) when the commissioners made a census of the Indians entitled to allotment. At the time the other allotments were made the appellee was the wife of W. A. Smith, a white man, and she was also the real head of the family, which consisted of the husband, his wife and their eight children. The parties were married January 16, 1861, and the appellee has been recognized by the Interior Department as the head of the family in the sense mentioned in the act of Congress of 1885.

At the time the allotments were made to the other Indians by the commissioners, as above mentioned, appellee was located and actually residing with her family upon the reservation upon a large tract of land, some five hundred and sixty acres, including the land in controversy herein, and she and her family at that time were living in a house about twenty steps from the boundary line of this particular 160 acres. The land (including the 160 acres) was enclosed in one body by having a furrow plowed around the same, marking it off from the other adjacent land. The appellee had selected the land in 1888, and with her family was then in possession thereof, and retained such possession until the fall of 1896, with the consent of Homily, chief of the Walla Walla Indians, and Show-a-way, chief of the Cayuse Indians, and also with the consent of ——— Coffee, who was at that time acting as Indian agent upon that Indian reservation.

Since 1888 and prior to the time when the allotment to defendant was made the appellee made valuable improvements upon and around the land in question, by building upon it a small cabin and a barn and making other improvements, and by putting a wire fence around the whole tract, the whole cost amounting to between $700 and $775, and from April, 1888,

until the fall of 1896, long after the allotments were made by the commissioners, the appellee and her family had possession of the land in question with the improvements thereon, and she and her family continued to live during that time in the house, about twenty steps from the boundary line of this land. When the appellee left the land in the fall of 1896 she left it because she was ordered to do so by the then Indian agent, pursuant to a determination by the Interior Department, made in 1893, that she was not entitled to any allotment under the act of 1885.

Before the land was allotted to the defendant and while the allotting commissioners were engaged in allotting lands in 1891, as above stated, the appellee asked to be allotted the particular 160 acres in controversy in this case by the commissioners, but they declined to do so because her name was not upon their allotting list. The defendant obtained possession of the 160 acres in October, 1896, and the land was allotted to him at that time, when appellee was ordered off the same by the Indian agent, and the defendant has never paid the appellee any money or in any manner reimbursed her for the improvements which she had made upon the lands in controversy, and the defendant had made no improvements thereon, and was aware of all that had been done by appellee when he made the selection of this land and when it was allotted to him. There is neither allegation nor proof that appellant has since made any improvements on the land.

In April, 1897, the Department of the Interior reconsidered its former decision, and held that appellee was entitled to an allotment of land upon the reservation, and it directed one G. W. Harper, the then Indian agent of that Indian reservation, to make an allotment to her, and, pursuant to that direction, Harper called upon her to make a selection of lands for her allotment, and she thereupon selected certain lands, which were not the lands in question, the land selected amounting to 146.2 acres in all, and she was recognized by the department as the head of a family entitled to make selection and

have an allotment. A part of this land she has since leased to a tenant and has accepted rental from the tenant, the lease covering only 70 acres.

The land selected by the appellee after she had been forced to relinquish the possession of the 160 acres was not as valuable as the land from which she was ordered, and at the time the selection of this other land was made by her she and her husband came to the office of the Indian agent and asked him if it would affect her rights in the land in question for her to select land as directed by the Indian commissioner. She was told by the agent that he thought it would not; that she was under orders from an officer, and not under her own free will, when she left the land, and it was taken possession of by the defendant, and with that understanding the appellee made the selection of the other and less valuable land.

The particular relief asked by the appellee in her bill was a decree declaring her "to be the allottee upon the said tract of land, and that the allotment thereof to the defendant be cancelled and annulled, and that the defendant, his servants and all persons holding under him, as tenants, lessees or otherwise, be forever enjoined from interfering with your orator's possession thereof, and that she may have judgment against the defendant for damages," etc.

*Mr. Samuel Herrick* and *Mr. John C. Gittings* for appellant:

The act of August 15, 1894, 28 Stat. 305, upon which complainant bases her right to bring suit, is not applicable to cases of this kind, where the decision of the Secretary of the Interior denying her allotment was made before the passage of such act. Such act is prospective in character, and confers a special jurisdiction where none existed before, and must be strictly construed, and fixed rights cannot be disturbed by it, nor prior decision of officers exercising proper powers be set aside. It relates to the future, and is not retrospective in effect. Endlich on Interpretation of Statutes, § 209, p. 392; 6 Am. & Eng. Ency. of Law, 939, 2d ed.; *Farrington* v. *Tennessee,* 95 U. S.

379; *Cheu Heong* v. *United States*, 112 U. S. 536; *Smith* v. *Lyon*, 44 Connecticut, 175; *Dyer* v. *Belfast*, 80 Missouri, 140; *Dash* v. *Van Kleeck*, 7 Johns. 477; *Vanderpool* v. *Railway Co.*, 44 Wisconsin, 663; Act of August 15, 1894, 28 Stat. 305.

The act of March 3, 1885, applies only to the Indians residing upon the Umatilla reservation at the time of its passage, and then members of the confederated tribes thereon, and not to persons who came there afterward seeking allotments, who had never resided there. Treaty of June 9, 1855, 12 Stat. 945; Act of March 3, 1885, 23 Stat. 340; *Sloan* v. *United States*, 95 Fed. Rep. 197; *Sloan* v. *United States*, 118 Fed. Rep. 287, 291, 292.

The United States is a necessary and indispensable party defendant herein, being the original source of title, the holder of the legal title, a trustee under a special statutory trust, and the allotting power, with the active duty of protecting the possession of the allottee. Act of March 3, 1885, 23 Stat. 340, § 1; Act of August 15, 1894, 28 Stat. 305; Rev. Stat. § 2119; *United States* v. *Flournoy Cattle Co.*, 69 Fed. Rep. 886; *United States* v. *Mullan*, 71 Fed. Rep. 682; 22 Ency. Pl. & Pr. 161, and cases there cited.

*Mr. R. J. Slater* and *Mr. T. J. Hinkle* for appellee:

As to who are Indians the courts follow the decisions of the Department. *United States* v. *Holladay*, 3 Wall. 419; *In re Kansas Indians*, 5 Wall. 737; *United States* v. *Boyd*, 68 Fed. Rep. 560; *United States* v. *Higgins*, 103 Fed. Rep. 348; *Farrell* v. *United States*, 110 Fed. Rep. 942.

Whether appellee was a Umatilla Indian in blood or not is immaterial so long as she was an Indian woman in whole or in part born within the United States and was recognized by them as one of their number. *Sloan* v. *United States*, 95 Fed. Rep. 193; *United States* v. *Higgins*, 103 Fed. Rep. 348.

When one person is in the actual and peaceable possession of government land no other can obtain a superior right thereto. See *Atherton* v. *Fowler*, 96 U. S. 513, which has been cited and

approved in many different kinds of cases. *Hosmer* v. *Wallace,* 97 U. S. 575; *Quimby* v. *Coulen,* 124 U. S. 423; *DelMonte* v. *Last Chance,* 171 U. S. 32; *Tustin* v. *Adams,* 87 Fed. Rep. 360; *United States* v. *LaChappelle,* 81 Fed. Rep. 152.

As between two claimants of public lands of any kind or nature, it has long been an established rule of law that the first in time is the first in right. *Shepley* v. *Cowen,* 91 U. S. 330; *Worth* v. *Branson,* 98 U. S. 118; *McCreery* v. *Haskell,* 119 U. S. 327.

The act of March 3, 1885, gives the appellee superior equities because it was evidently the intention of Congress to put the Indians in a position whereby they might protect their possessions, their homes and their families. The heads of families were authorized and empowered to make their selections, and the law in its scope and effect is very like the homestead law, and the allottees are to be regarded very much as homesteaders. *State* v. *Norris,* 55 N. W. Rep. 1086, 1089.

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

The first objection made by counsel for the appellant is that the act of Congress of August 15, 1894, 28 Stat. 286, 305, under which the complainant instituted this suit, is not applicable to this case, and, therefore, the court has no jurisdiction of the subject matter. The objection made by the appellant is, that to make the act applicable to the appellee would be to give it a retrospective effect, while its purpose is plainly prospective. The objection is untenable.

The appellee claims that under the act of 1885 she was entitled to an allotment of land in the Umatilla reservation, and that it was improperly refused her. The act provides (p. 305): "That all persons who are in whole or in part of Indian blood or descent, who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment act or under any grant made by

Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any act of Congress, may commence and prosecute or defend any action, suit or proceeding in relation to their right thereto in the proper Circuit Court of the United States."

That this act embraces the case of a person situated, as was the appellee at the commencement of this suit, seems to us so plain as to require no further argument. It is not in any way a retrospective operation which is thus given to the act, except as it applies, by its language, to any one who was then (at the time of the passage of the act of 1894) entitled to an allotment. She claims that she was so entitled to an allotment of the land in question, and that it had been improperly allotted to defendant (appellant), and that the act permits her to assert her claim in the Circuit Court, as against the appellant, and to have it adjudged between them. We have no doubt she has that right.

The next objection is that the complaint does not state facts sufficient to constitute a cause of action, in that it fails to allege the residence of the complainant (appellee) on the reservation at the time of the passage of the allotment act (1885), and shows upon its face that her claim for this allotment was decided against her by the Secretary of the Interior in 1891, long prior to the passage of the act of 1894, under which she is now suing, and when the sole authority for settling disputes concerning allotments resided with the Secretary of the Interior.

We are of opinion that it was not necessary to allege or prove the residence of the appellee on the reservation at the time of the passage of the act of 1885, called the "Allotment Act." That act had reference, as its preamble states, to the "Confederated bands of Cayuse, Walla Walla and Umatilla Indians, residing upon the Umatilla reservation, in the State of Oregon."

It related to the residence of the bands as bands and not as individual Indians, many of whom were residing off the par-

ticular reservation and yet within the country theretofore ceded to the United States by the treaty of 1855. Under the act mentioned a commission was appointed by the President, the members of which were to go upon the reservation and ascertain as near as might be the number of Indians who would remain on that reservation and who should be entitled to take lands in severalty thereon, and the amount of land required to make the allotment, and the commission was then to determine and set apart so much of their reservation as should be necessary to supply agricultural lands for allotments in severalty. The commission was to report to the Secretary of the Interior the number and classes of persons entitled to allotment as near as they might be able to do so, and if the report were approved by the Secretary of the Interior the tracts selected should thereafter constitute the reservations for those Indians, and within which the allotments provided for in the act should be made.

Under this act a report had been made to the Secretary of the Interior by the commission some time after the conclusion of their labors in the Indian countries in 1891, and an opinion was asked by the Department of the Interior from the Assistant Attorney General regarding the rights of the appellee, among others, to an allotment under that act which had been refused by the commission. An opinion was delivered on July 1, 1893, by one of the Assistant Attorneys General, in which he held that the appellee was not entitled to an allotment, but upon reviewing that opinion, on June 28, 1895, he held that she was entitled thereto. In his latter opinion he thought that while it was agreed in the treaty of 1855, already mentioned in the statement of facts, that the Indians should remove within one year to the permanent reservation (which in this case was the Umatilla reservation), yet there was no penalty affixed to its violation, and the failure of the Indians to so remove and reside would not work a forfeiture of their tribal rights, and that while the appellee was not residing upon this reservation at the time that the act of 1885 became operative, she was;

so far as that fact was concerned, in the same position as a majority of the Indians belonging to the confederated tribes mentioned in the act; that the record showed that when the agents of the Government went on this reservation they found but few Indians actually residing there, and it was only after weeks of sending out runners and using all the means at their disposal that the commissioners succeeded in securing the attendance of a majority of the male adults of these tribes. The Assistant Attorney General gave the opinion that that was itself a recognition by the department that residence upon the reservation was not essential to tribal recognition.

It is plain that the agreement in the treaty of 1855, by which the tribes and bands agreed to remove to and settle upon the reservation within one year after the ratification of this treaty, had not been lived up to so far as actual residence upon the reservation of individual Indians was concerned. Thirty years after that time, when the act of 1885 was passed, it is seen that a majority of the Indians were not even then actually residing, in the strict sense of the term, upon this reservation. There existed under the treaty an exclusive right among the Indians of taking fish from the streams running through and bordering upon the reservation, and at all other usual and accustomed stations, in common with the citizens of the United States, and the privilege of erecting suitable buildings for curing such fish, and also the right of pasturing their stock on unclaimed lands in common with the citizens of the United States was secured to them. The right to roam over so much of the territory as was ceded by them to the Government as they had been accustomed to do and such as were not settled upon or claimed for individual use by citizens of the United States seems to have been recognized, or to have been expected by the Government, although the residence of the tribe or band as such was to be within the reservation mentioned in the treaty. It was also said in the opinion regarding the facts in this case:

"The trouble with these claimants seems to have arisen out

of their failure to be upon the reservation when the census roll of the tribe was made up. They arrived at said reservation in reply to the communication sent to them by one of the Indians the day after the census takers had left the reservation, to wit, on the 7th day of June, 1887, or rather Mrs. Morisette arrived upon that day and Mrs. Smith shortly afterwards. They were recognized by Homily, chief of the Walla Wallas, and various other head men and members of the confederated tribes, and the Indian agent then in charge assigned each one of them to a parcel of land, after selection, and they have made valuable improvements on and have continued to reside thereon, as far as this record shows, ever since, the value of their improvements amounting to a considerable sum. They began residence upon the land about the middle of June, and their reasons for not having arrived sooner being that they lived some two hundred miles away and were without money to make the trip."

Pursuant to this opinion of the Assistant Attorney General, the Department of the Interior reconsidered its former decision, and held that the appellee was entitled to an allotment under the act of 1885. We concur with the latter opinion of the Assistant Attorney General, and hold that it was not necessary that the individual Indian of the tribes mentioned in the act of 1885 should be actually residing on the reservation at the time of the passage of that act. If the individual were a member of the tribe or band, recognized as such by his chiefs, it was not necessary that such person should be an actual resident of the reservation when the act was passed. The fact found is that the appellee herein is a full-blooded Indian woman, and was at all the times mentioned a member of the Walla Walla band or tribe of Indians, and at the time of the original allotment resided upon the reservation in the State of Oregon. When such a large percentage of allottees upon this reservation resided as did the appellee, elsewhere than actually upon the reservation at the date of the passage of the act of 1885, it cannot be that the act passed was intended

to limit the right to an allotment to those actually residing on the reservation to the exclusion of a majority of the members of the different bands or tribes. The fact of such non-residence is presumed to have been known by Congress, and the act should be construed with reference to that knowledge.

The purpose of the treaty and of the act evidently was to induce the Indians and encourage them so far as possible to break up the tribal relations and adopt the habits of an agricultural people, and it would seem that those persons who were Indians and members of one or the other bands or tribes of Indians mentioned in the treaty and in the act and recognized by the chief of the tribe, should have the right to an allotment, especially if recognized by the Land Department as entitled thereto.

The purpose of the act would fall very far short of accomplishment were the allotments confined exclusively to those actually residing within the limits of the reservation, while those who were absent therefrom, but still within the old limits of the land, and were members of the band, recognized as such, should be held not entitled to the allotments under the act, simply because of residence outside of the described limits of the reservation.

The appellant further contends that the weight of the evidence shows the appellee is not a member of the Walla Walla tribe of Indians. We are not disposed to review that question of fact, which has been determined by the special examiner and adopted by the Circuit Court and the Circuit Court of Appeals. There is evidence upon which the fact as found may be based, and it is not so plainly erroneous as to call upon this court to vary from its usual rule not to review the unanimous finding upon questions of fact of two courts, unless such finding is plainly erroneous. *Stuart v. Hayden,* 169 U. S. 1, 14; *Baker v. Cummings,* 169 U. S. 189, 198; *The Carib Prince,* 170 U. S. 655; *Towson v. Moore,* 173 U. S. 17; *Smith v. Burnett,* 173 U. S. 430, 436; *Brainard v. Buck,* 184 U. S. 99.

Another objection is made that the United States is a nec-

essary party defendant, and, not being before the court, no binding decree can be entered herein.

The contest here is between two Indians, each claiming the same land under an allotment which was made last to the appellant herein. The United States has no interest in the result. Both parties are Indians claiming under the act of 1885.

In our opinion the claim that the United States must be made a party is without foundation. Under the act of 1894 (*supra*) the Circuit Courts are given jurisdiction to try and determine any action of this nature, involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty, "and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him. . . . *Provided*, That the right of appeal shall be allowed to either party as in other cases." The case at bar was commenced prior to the amendment of the statute of 1894 by the act of February 6, 1901, 31 Stat. 760, wherein it is provided that the United States shall be a party defendant, and the case must be decided without regard to the amendment.

Under this statute there is no provision rendering it necessary, in a private litigation between two claimants for an allotment, to make the United States a party. The statute itself provides that the judgment or decree of the court, upon being properly certified to the Secretary of the Interior, is to have the same effect as if the allotment had been allowed and approved by the Secretary. This provision assumes that an action may be maintained without the Government being made a party, and provides for the filing of a certificate of the judgment and its effect; and the Government thereby in substance and effect consents to be bound by the judgment and to issue a patent in accordance therewith. The first section of the act of 1885 (*supra*) provides that an allotment made by

or under the direction of the Secretary of the Interior entitles
the allottee to a patent for the land allotted to him.   And the
filing of the certificate'of the judgment decreeing an allotment
is to have the same effect with the Secretary as if the allot-
ment had been made by him.   This is sufficient.

Upon the facts herein found we are also of opinion that the
appellee selected the lands in controversy within the meaning
of the statute long prior to the selection made by the appellant,
and that she is not concluded by the selection she afterwards
made of another tract of land.   The act of 1885 provided that
the selection of land for allotment should be made by heads
of families.   The appellee was such and was so recognized by
the Land Department.   By section 6 of the act the Secretary
of the Interior had power to determine all disputes between
Indians respecting the allotments.   If more than one person
claimed the same land, it is, as we think clear, that the dispute
should be decided and the allotment made in favor of the one
whose priority of selection and residence and whose improve-
ments on the land equitably entitled such person to the land.
The Government has proceeded upon such principle hereto-
fore, Shepley v. Cowan, 91 U. S. 330, and it is a right and
eminently just principle.   The defendant knew of the prior
possession of the appellee, at the time he made his selection,
and knew of her improvements upon the land, for they were
open and visible, while he had made none, and had obtained
possession by direction of the Land Office, only because of the
mistake in law which denied the right of allotment to appellee
on account of her absence when the census was taken.   De-
fendant with all this knowledge selected the land and never
offered to pay a dollar for the improvements and never has
paid anything therefor, nor does he allege in his answer, and
there is no proof that he has since made any improvements
on the land or expended anything thereon.   When the Land
Department corrected its mistake of law the appellee had the
right to insist upon her original selection.   Her selection of
other land, after the department had reconsidered her case,

does not prevent her from claiming this land from defendant. She selected the other land only after advising with the Indian officer and upon his statement that it would not affect her claim for the land she had previously selected and from which she had been ordered by the officers of the Government. She has never received any patent from the Government for this other land, and nothing further need be done by her in order to authorize the Government to cancel the allotment for this other land at the time when patent issues for the original selection.

We find no error in the judgment, and it is

*Affirmed.*