## BOND v. UNITED STATES.

(Circuit Court, D. Oregon. September 12, 1910.)

No. 3,162.

1. INDIANS (§ 18*)—INDIAN LANDS—ALLOTMENT—STATUTES—APPLICATION.

Act Cong. June 25, 1910, c. 431, 36 Stat. 855, provides that when any Indian to whom an allotment has been made, or may hereafter be made, dies before the expiration of the trust period, and before issuance of a patent, without having disposed of the allotment by will, the Secretary of the Interior shall ascertain the legal heirs of the decedent and his decision shall be final and conclusive. *Held*, that the act applies to any allottee who dies before the expiration of the trust period, whether the allotment has been made at the time of the passage of the act or is made in the future, and whether the death occurs before or after the passage of the act.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 18.*]

2. INDIANS (§ 13*)—INDIAN LANDS—ALLOTMENT—TITLE—TRUST PERIOD.

Under the general allotment act (Act Feb. 8, 1887, c. 119, 24 Stat. 388), providing for the allotment of lands in Indian reservations, the United States retained title and control over the allotted lands during the trust period without any right in the allottee, except to occupy and cultivate the lands under a paper or writing showing that at a particular time in the future, unless extended by the President, the allottee would be entitled to a patent for the fee.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

3. INDIANS (§ 13*)—INDIAN LANDS—ALLOTMENT—EFFECT.

An Indian allottee by accepting an allotment does not cease to be a ward of the government, but still remains in a condition of pupilage and dependency, the determination of all disputes concerning the allotment, its occupancy and possession, and the general control of the Indian remaining within the jurisdiction of the Secretary of the Interior.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

4. INDIANS (§ 18*)—INDIAN LANDS—ALLOTMENT—HEIRSHIP—DETERMINATION —JURISDICTION.

Act Cong. June 25, 1910, c. 431, 36 Stat. 855, providing that, if an Indian allottee dies before the expiration of the trust period and the issuance of a patent without having disposed of his allotment by will, the Secretary of the Interior shall ascertain the legal heirs of such decedent, and his decision shall be final and conclusive, operated to repeal Act Cong. Feb. 6, 1901, c. 217, 31 Stat. 760, conferring on Circuit Courts of the United States jurisdiction over matters growing out of the execution of the allot-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment act, and deprived the courts of jurisdiction to determine such heirship, and, since the act of 1910 contained no saving clause, the authority of the courts under the repealed act of 1901 immediately ceased in so far as pending causes were concerned.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 18.*]

Suit by Frank Bond against the United States of America, as trustee for the heirs of John Calipooia, alias Calapooya Jack, deceased. Dismissed.

Thomas G. Hailey, Oscar Hayter, and W. E. Thomas, for plaintiff. Walter H. Evans, Asst. U. S. Atty.

BEAN, District Judge. This suit was brought in 1907 by an Indian, Frank Bond, for a decree adjudging him to be sole heir of one Calapooya Jack, an Indian to whom an allotment of land was made in the Grand Ronde reservation in 1891, under the allotment act of February 8, 1887 (Act Feb. 8, 1887, c. 119, 24 Stat. 388). The government defends the suit on the ground that one Moses Lane, and not plaintiff, is the heir of the allottee and entitled to the land, and the only question for determination is which one of these parties is the legal heir of the deceased allottee. At the outset the court is confronted with the question of its jurisdiction over this controversy, or its authority to decide the question involved. After issue had been joined, but before trial, Congress passed an act approved June 25, 1910 (36 Stat. 855, c. 431), which provides:

"That when any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive. If the Secretary of the Interior decides the heir or heirs of such decedent competent to manage their own affairs, he shall issue to such heir or heirs a patent in fee for the allotment of such decedent; if he shall decide one or more of the heirs to be incompetent he may, in his discretion, cause such lands to be sold; Provided, that if the Secretary of the Interior shall find that the lands of the decedent are capable of partition to the advantage of the heirs, he may cause the shares of such as are competent, upon their petition, to be set aside and patents in fee to be issued to them therefor."

It has been suggested that this act has no bearing on the present suit (1) because it does not apply where the allottee had died before its passage; and (2) the jurisdiction thereby conferred on the Secretary of the Interior to ascertain the heirs of a deceased allottee is concurrent with the courts, and not exclusive  The first point is concluded by the language of the act.  It is made to apply to the case of any Indian to whom an allotment "has been" or "may hereafter be made," and who dies before the expiration of the trust period. In this respect it differs from the act of 1906 (Act May 8, 1906, c. 2348, 34 Stat. 183), which conferred somewhat similar powers upon the Secretary of the Interior as to allotments "hereafter" made. The later act includes any allottee who may die before the expiration of the trust period, whether the allotments had been made at the time of its passage or should be made in the future, and whether the death occurs before or

after the passage of the act.    If, therefore, the jurisdiction thus conferred on the Secretary of the Interior is exclusive, the court should proceed no further in this suit, but dismiss it.

By the general allotment act (Act Feb. 8, 1887, c. 119, 24 Stat. 388) the President is authorized, whenever in his opinion an Indian reservation or any part thereof is advantageous for agricultural or grazing purposes, to cause the same to be surveyed or resurveyed and to allot the lands on such reservation in severalty to the Indians located thereon in certain specified quantities.    The allotments were to be made by special agents appointed by the President and the agent in charge of the particular reservation under such rules and regulations as the Secretary of the Interior may, from time to time, prescribe, and to be certified to that officer for his action.    Upon approval of the allotment by the Secretary of the Interior, he was required to cause patents to issue in the name of the allottee, declaring in legal effect that the United States does and will hold the land therein allotted for the period of 25 years in trust and for the sole use and benefit of the allottee, or, in case of his death, of his heirs, according to the laws of the state or territory where the land is located, and at the expiration of such period, unless it be extended by the President, to convey the same to him in fee, discharged of the trust.    By this act, the United States retained title to and control over the allotted lands during the trust period, without any right in the allottee to do more than occupy and cultivate them under a paper or writing, showing that at a particular time in the future, unless it is extended by the President, he would be entitled to a regular patent, conveying the fee.    The property did not cease, by the allotment, to be the property of the United States nor subject to its control, nor did the allottee cease to be a ward of the government.    The title still remained in the government, and the allottee remained in a condition of pupilage and dependency.    The determination of all disputes concerning the allotment, its occupancy and possession, and the general control of the Indian remained with the Secretary of the Interior.

The supervisory power and control of the United States over allotted lands during the trust period was pointed out by the Supreme Court in United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532.    This was a suit instituted at the direction of the Attorney General to restrain the collection of taxes on permanent improvements and personal property used in the cultivation of lands allotted to and occupied by certain Indians in the state of Dakota.    The court held that, notwithstanding the allotment, the United States reserved such control over the allotment as was essential to cause the allotted lands to inure during the period in which they were to be held in trust "for the sole use and benefit of the allottees," and that the land, the improvements thereon, and the personal property used in their cultivation were mere instrumentalities of the government employed for the benefit and control of a dependent race, and were therefore not subject to taxation by the state, and that the government had such interest therein that it could maintain a suit to restrain the collection of such taxes.    The title to the land and the consequent control thereof being in the United States, it was subsequently held in the Smith Case, 194 U. S. 401, 24

Sup. Ct. 676, 48 L. Ed. 1039, and the Kalyton Case, 204 U. S. 458, 27 Sup. Ct. 346, 51 L. Ed. 566, that the sole authority for settling all controversies necessarily including the determination of the title and incidentally the right to the possession of the Indian allotments while the same were held in trust by the United States resided in the Secretary of the Interior, and were not cognizable by any court, either state or federal, except as such authority has been expressly conferred by act of Congress. It follows, therefore,·that unless the court has jurisdiction to ascertain and determine disputes arising over the question of heirship of deceased allottees by virtue of some act of Congress, and especially if Congress has conferred exclusive jurisdiction over that question upon another department of the government, the court is without authority to proceed in the matter. Now the only act of Congress conferring authority upon the courts is that of February 6, 1901 (Act Feb. 6, 1901, c. 217, 31 Stat. 760), which provides inter alia, as follows:

"That all persons who are in whole or in part of Indian blood or descent, who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any act of Congress, may commence and prosecute or defend any action, suit or proceeding in relation to their right thereto in the proper Circuit Court of the United States; and said Circuit Courts are hereby given jurisdiction to try and determine any action, suit or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or. treaty (and in said suit the parties thereto shall be the claimant·as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands now held by either of the Five Civilized Tribes, nor to any of the lands within the Quapaw Indian Agency: Provided, that the right of appeal shall be allowed to either party as in other cases."

This law clearly gives the Circuit Court of the United States jurisdiction over matters growing out of the execution of the allotment act, but whether it is confined to questions concerning the right to an allotment, or is broad enough to include disputes over possession, descent, and partition of the lands after the date of the allotment and before final patent, is by no means clear. This question, so far as I am advised, has never been directly passed upon by the courts, although suits to ascertain the heirs of deceased allottees have been instituted and decided. If, however, Congress intended by the act of 1901 to confer upon the courts jurisdiction to determine questions of heirship and descent as it may affect allotted lands during the trust period, it was a jurisdiction which it could take away at any time. This it did by making the Secretary of the Interior a special tribunal to determine such questions and declaring that his decision shall be "final and conclusive," thus making the jurisdiction conferred upon him exclusive, and to that extent operated as a repeal, by implication, of the act of 1901, conferring jurisdiction on the courts. U. S. v. Tynen, 11 Wall. 88, 20 L. Ed. 153; Eckloff v. D. C., 135 U. S. 240, 10 Sup. Ct. 752, 34

L. Ed. 120. And, as there is no saving clause, the authority of the court immediately ceased over pending cases.

In my judgment, therefore, the court has no jurisdiction of this suit, but the question sought to be litigated must be determined by the Secretary of the Interior.

The suit will be dismissed.