**ARENAS v. PRESTON et al.**

**UNITED STATES et al. v. PRESTON et al.**

No. 12046.

United States Court of Appeals
Ninth Circuit.

March 23, 1950.

John M. Ennis, Los Angeles, Cal., Clifton Hildebrand, Oakland, Cal., for appellant, Lee Arenas.

A. Devitt Vanech, Asst. Atty. Gen., Ernest A. Tolin, U. S. Atty., Los Angeles, Cal., Irl D. Brett, Sp. Asst. to Atty. Gen., Roger P. Marquis and John C. Harrington, Attys., Dept. of Justice, Washington, D. C., for appellants United States and Lee Arenas.

John W. Preston, Oliver O. Clark and David D. Sallee, Los Angeles, Cal., for appellees.

Before STEPHENS and POPE, Circuit Judges, and LING, District Judge.

STEPHENS, Circuit Judge.

Lee Arenas, a Mission Indian, sued the United States to have determined his right to an allotment of certain land situated in the Palm Springs Indian Reservation in California. After extended litigation,[1] he was substantially though not wholly successful in his claim.

This appeal is from a supplemental decree[2] of the district court awarding to Arenas' attorneys fees and expenses and securing the payment thereof by the impression of a lien upon the land inuring to his benefit as a result of the litigation. The appeal was taken by the United States on behalf of the Indian and by the Indian individually.

The claim of Arenas was assertable against the United States by virtue of the waiver of sovereign immunity to suit found in the Act of 1894, 28 Stat. 286, 305, as amended, 25 U.S.C.A. § 345.[3]

The key question for decision in this appeal concerns the jurisdiction of the district court to declare a lien on property in

1. See decisions in the following cases: Arenas v. United States, D.C.S.D.Cal., No. 1321 O'C-Civil (1942), affirmed, Id., 1943, 9 Cir., 137 F.2d 199, reversed, Id., 1944, 322 U.S. 419, 64 S.Ct. 1090, 88 L. Ed. 1363; Arenas v. United States, 1945, D.C.S.D.Cal., 60 F.Supp. 411, affirmed in part and reversed in part, United States v. Arenas, 9 Cir., 1946, 158 F.2d 730, certiorari denied, Arenas v. United States and United States v. Arenas, 1947, 331 U.S. 842, 67 S.Ct. 1531, 1532, 91 L.Ed. 1853.

2. The district court in the judgment entered on the merits, see 60 F.Supp. 411, retained jurisdiction "for the purpose adjudicating the reasonable sums that shall be allowed and paid to the attorneys of record for plaintiff for their services rendered to him in this action and for expenses necessarily incurred by them in for his behalf in the prosecution thereof, for the purpose of making all necessary and proper orders, judgments and decrees for the securing and payment of all such sums so found due and owing by the plaintiff to said attorneys."

3. Act of 1894, 28 Stat. 286, 305, as amended, 25 U.S.C.A. § 345, "All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty

the circumstances obtaining. The government argues that such declaration is in effect a judgment against the United States by which it has not consented to be bound and that it violates congressional intent as expressed in applicable enactments relating to Indian lands.

On the other hand it is contended by appellees that the district court, having acquired the equity jurisdiction to hear and decide the case in which the United States is a party, may fully adjust the matter by providing for the payment of expenses and attorneys' fees through the impression of a lien on the land which it adjudges to be the Indian's allotment.[4]

Under the General Allotment Act and related legislation,[5] the Indian allottee receives what is called a "trust patent". The legal title to the allotted land is retained by the United States under the immediate supervision of the Secretary of the Interior. Whether the allotment has been made by the Secretary or by a judgment of the court, the Indian has an equitable estate in the allotted land with the right of occupancy and the use of produce but without the right of alienating or encumbering th· land.[6] United States v. Hellard, 1944, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326. Throughout the history of Indian legislation the Congress has been aware that the

(and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands held August 15, 1894, by either of the Five Civilized Tribes, nor to any of the lands within the Quapaw Indian Agency: Provided, That the right of appeal shall be allowed to either party as in other cases."

4. "It is a general rule in courts of equity that a trust fund which has been recovered * * * through their intervention may be charged with the costs and expenses, including reasonable attorney's fees, incurred in that behalf; * * *." United States v. Equitable Trust Co., 1931, 283 U.S. 738, 744, 51 S.Ct. 639, 641, 75 L.Ed. 1379.

5. The proviso for severance in severalty of the land here involved appears in the Mission Indian Act of January 12, 1891, 26 Stat. 712. Section 5 of this Act provides as follows: "That upon the approval of the allotments provided for in the preceding section by the Secretary of the Interior he shall cause patents to issue therefor in the name of the allottees, which shall be of the legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State of California, and that at the expiration

of said period the United States will convey the same by patent to the said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: Provided, That these patents, when issued, shall override the patent authorized to be issued to the band or village as aforesaid, and shall separate the individual allotment from the lands held in common, which proviso shall be incorporated in each of the village patents."

Section 5 of the General Allotment Act of 1887, 24 Stat. 388, 389, 25 U.S. C.A. § 348, generally states the same.

6. "* * * the United States retained the legal title, giving the Indian allottee a paper or writing, improperly called a patent, showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent conveying the fee. * * * these lands are held by the United States in execution of its plans relating to the Indians,—without any right in the Indians to make contracts in reference to them, or to do more than to occupy and cultivate them,—until a regular patent conveying the fee was issued * * *." United States v. Rickert, 1903, 188 U.S. 432, 436, 437, 23 S.Ct. 478, 480, 47 L.Ed. 532.

"We need not, however, exactly define it [the interest which the Indian allottee has]. It is certainly more than a right of mere occupation. · The restraint upon alienation must not be exaggerated. It does not of itself debase the right

inexperienced and uneducated Indian would be subject to imposition and would suffer from his own improvidence unless protected therefrom by the Government.

We come to the question: Does the equity jurisdiction of federal courts under the Act of 1894 invoke all equitable processes and hence permit the application of rules " * * * which experience has shown to be essential to the adequate protection of a wronged *cestui que trust* * * * ? "

United States v. Equitable Trust Co., 1931, 283 U.S. 738, 745, 51 S.Ct. 639, 641, 75 L. Ed. 1379.[7] The opinion in United States v. Equitable Trust Co., supra, is pointed to by appellee as decisive of the issue. We quote: "Counsel for the United States concede the general rule [see footnote 4 ante], but regard it as inapplicable here. They assume that Barnett's fund was restricted in the sense that it was not subject to disposal in any form or for any purpose, save with the

below a fee simple. * * * The title is held by the United States, it is true, but it is held 'in trust for individuals and their heirs to whom the same were allotted.' * * * The land is not the land of the United States, and the timber when cut did not become the property of the United States. And we cannot extend the restraint upon the alienation of the land to a restraint upon the sale of the timber consistently with a proper and beneficial use of the land by the Indians, —a use which can in no way affect any interest of the United States." United States v. Paine Lumber Co., 1907, 206 U.S. 467, 473, 27 S.Ct. 697, 699, 51 L. Ed. 1139.

"The fee of the United States is not a dry legal title divorced from substantial powers and responsibilities with relation to the land." State of Minnesota v. United States, 1939, 305 U.S. 382, 386, n. 1, 59 S.Ct. 292, 294, 83 L.Ed. 235.

"The virtual fee is in the allottee, with certain restrictions on the right of alienation." United States v. Minnesota, 8 Cir., 1940, 113 F.2d 770, 773; United States v. Oklahoma Gas & Electric Co., 10 Cir., 1942, 127 F.2d 349.

"If the tribal lands are allotted to individuals, the allottee, upon receipt of a certificate of allotment, acquires an equitable title and the right to exclusive possession of the allotted land, subject, however, to the supervisory power of the Government, or limitation of alienation, during a twenty-five year period." St. Marie v. United States, D.C.S.D. Cal.1938, 24 F.Supp. 237, 240.

"Through an allotment, the Indian allottee acquires an equitable title to the land. While the Government retains the legal title in trust for the Indian, the title of the Indian, except for the limitation against alienation, is, in reality, a title in fee simple." Eastman v. United States, D.C.W.D.Wash.1939, 28 F.Supp. 807, 808.

As respect such allotments "the United States possesses a supervisory control over the land and may take appropriate measures to make sure that it inures to the sole use and benefit of the allotee and his heirs throughout the original or any extended period of restriction." United States v. Bowling, 1921, 256 U.S. 484, 487, 41 S.Ct. 561, 562, 65 L.Ed. 1054.

"The lands, which, prior to the allotment, undoubtedly formed part of the Indian country, still retain during the trust period a distinctively Indian character, being devoted to Indian occupancy under the limitations imposed by Federal legislation." United States v. Pelican, 1914, 232 U.S. 442, 449, 34 S.Ct. 396, 399, 58 L.Ed. 676.

7. "The jurisdictional Act of 1894, under which this suit is in the courts, requires them to adjudicate legal rights of the parties and to render a judgment which will stand in lieu of the Secretary's action if he has *unlawfully denied* a patent to an allotment to which the Indian is entitled." Arenas v. United States, 1944, 322 U.S. 419, 432, 64 S.Ct. 1090, 1095, 88 L.Ed. 1363.

"* * * the government * * * in substance and effect, consents to be bound by the judgment, and to issue a patent in accordance therewith." Hy-Yu-Tse-Mil-Kin v. Smith, 1904, 194 U.S. 401, 413, 24 S.Ct. 676, 681, 48 L.Ed. 1039.

"* * * a decree in favor of a claimant under [the 1894 Act] will not have the effect of removing either the claimant or the land from without the control of the interior department, as the act provides that the judgment or decree in favor of the claimant shall be certified to the secretary of the interior, and shall have the same effect as though the allotment had been allowed and approved by the secretary, and an allottee who establishes a legal right to an allotment in severalty by decree of the court will be subject to the same laws and departmental rules that would obtain in case the allotment had been made by the land department." Sloan v. United States, C.C.D.Neb.1899, 95 F. 193, 195.

approval of the Secretary of the Interior; and from this they argue that the court by charging the fund with the costs and expenses and requiring their payment therefrom would be disposing of a part of the fund in violation of applicable restrictions. We make the assumption that the restrictions had substantially the same application to the fund that they had to the land from which it was derived, but we think the argument carries them beyond their purpose and the fair import of their words. Without doubt they were intended to be comprehensive and to afford effective protection to the Indian allottees, but we find no ground for thinking they were intended to restrain courts of equity when dealing with situations like that disclosed in this litigation from applying the rules which experience has shown to be essential to the adequate protection of a wronged *cestui que trust* such as Barnett was shown to be. * * * When all is considered, we are brought to the conclusion that the United States by its intervention and participation in the suit, consented, impliedly at least, that reasonable allowances be made from the fund, under the rule before stated, for the services and expenses of the next friend and his attorneys." United States v. Equitable Trust Co., 1931, 283 U.S. 738, 744, 745, 746, 51 S. Ct. 639, 641, 75 L.Ed. 1379.

Appellant United States in the instant case makes practically the same argument as it made in the Equitable case. That is, that the court cannot apply the general rule, to wit: That a court of equity may settle incidental questions as well as fundamental questions, because the applicable statutes in this case do not specifically authorize it. It is also argued that as to our case the applicable statute does not authorize the impression of a lien upon the property, because its foreclosure would have the effect of disposing of a part of the property. But the Supreme Court rejected the argument by saying that it was intended that the restrictions on the allotted land, *which apply as well to produce from the land,* should afford protection to the allottee, rather than to restrict courts of equity from giving such protection.

■ Since the restrictions on the land and its produce are one and the same and since attorney fees and expenses necessary to protect the fund can be paid out of the fund, it follows that so much of the land as is necessary to satisfy the lien can be resorted to for these necessary expenses.

■ The appellant's argument carried it to the cruelly farcical posture that the government must protect the Indian by strictly preventing any diminution of the allotted land even though by exercising such protection the Indian without funds cannot have any part of his rightful allotment of land. "It must be remembered that the fundamental consideration is the protection of a dependent people." United States v. Pelican, 1914, 232 U.S. 442, 450, 34 S.Ct. 396, 399, 58 L.Ed. 676. And legislation must be construed in the way most favorable to the Indian. United States v. Celestine, 1909, 215 U.S. 278, 290, 30 S.Ct. 93, 54 L.Ed. 195; Choate v. Trapp, 1912, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941; Chase v. United States, 8 Cir., 1916, 238 F. 887, 893; Arenas v. United States, D.C.S.D.Cal. 1945, 60 F.Supp. 411, 420.

At the risk of being unnecessarily repetitious we summarize as follows:

We appreciate the fact that the allotment scheme as to Mission Indians was adopted by Congress in accordance with its belief that the time had come to direct the Indian away from the tribal system of life and into the nation's system of individual responsibility and ownership of property. It thought, however, that a sudden and complete change over at one step would result in many allottees losing their property through inexperience. Accordingly the restriction against alienation and encumbering was provided. It was contemplated, however, that eventually (the details need not be recited) all restrictions would be removed.

When the United States authorized the Indian to make the United States an adversary party in its own courts, it did so knowing that the Indian by himself was incapable of taking advantage of the privilege and that attorney fees and other expenses would be the unavoidable concomitant. It also knew that the Indian litigant, with few exceptions, was without the means to meet the necessary expenses. It

seems to us that Congress could not have intended to commit the subject to its courts with any paralyzing limitation but, in committing the subject to its courts it intended them to fully exercise their general equitable jurisdiction. The chancellor will, of course, see to it that no unconscionable fee or extravagant expenditure will be allowed and will protect the allotment from being affected in the slightest unnecessary manner or degree.

We think the case of United States v. Equitable Trust Co., supra, is authority in support of appellees' contention, and the trial court's holding, that the land comprising the allotment awarded Arenas may be impressed with a lien as security for the payment of attorney's fees and necessary expenses of the litigation.[8]

It is argued by appellant Arenas that the amount of fees awarded should have been governed by the written attorney's contract executed in 1940. This contract provided for an aggregate fee of 10% of the value of the land recovered. Appellees Clark and Sallee performed under such arrangement until 1943 when appellee Preston became associated. In 1945 Arenas signed another contract wherein he agreed to compensate appellees on a quantum meruit basis. The district court, having ruled that the 1945 contract superseded the 1940 contract, allowed to appellees Clark and Sallee 10% of the value of the interest secured for Arenas and to appellee Preston 12½% of such value as the reasonable value of his services. See Blair v. Cullom, 2 Cir., 1948, 168 F.2d 622.

■ We think, however, that the fee and necessary expenditures which can be the United States still retains an interest in the subject of a lien on the property cannot be awarded upon any contract by and between the allottee and his attorneys since the land. When, as here, the attorneys seek to secure their fees by a lien upon the property the judge as the chancellor has the jurisdiction to impress the lien for a sum equal to but not in excess of the sum which he deems reasonable.

■ The record before us reveals the fact that the court did not determine the value of the allotment Arenas secured and therefore could not have known the value of the percentage allowances made for which a lien was ordered. It may be that the value of the percentage allowed for attorney's fees upon a finding of the property value, would prove either inadequate or grossly excessive. The interest of the United States in the allotment will not cease to exist until the "trust patent" to the property is ripened into an unqualified patent to it and the impressment of a lien for an excessive fee would illegally and inequitably affect such interest. However, should a sale of a portion of the land take place to satisfy the lien, such portion would be freed of any governmental interest under the same sanction that a portion of the fund in the Equitable case was freed of any governmental interest. The district court should have proceeded expressly to fix the dollar value of the services performed as the basis for the sum secured by the lien and in so doing should have considered and determined the value of the thing secured by the litigation, namely, the reasonable value of the Indian's interest in the allotted land under the trust patent, as one of the elements to be taken into consideration. See Sampsell v. Monell, 9 Cir., 1947, 162 F.2d 4.

The case is remanded to the district court with instructions to determine the sum of money for which amount the lien against the allotted property is to be impressed. Upon such determination having been made

---

8. Reliance by appellees is placed upon the cases of United States v. Anglin & Stevenson, 10 Cir., 1944, 145 F.2d 622, and Anglin & Stevenson v. United States, 10 Cir., 1947, 160 F.2d 670, certiorari denied, 1947, 331 U.S. 834, 67 S.Ct. 1514, 91 L.Ed. 1847. It is fair to say, however, that these cases must be read in the light of the legislation under which they were prosecuted. They were not commenced under authority of the Act here involved. Rather, the permission to sue appears in the Act of April 12, 1926, 44 Stat. 239, wherein it is expressly stated that the judgment "shall bind the United States and the parties thereto to the same extent as though no Indian land or question were involved." No express provision of this kind is to be found in the 1894 Act.

and upon the lien having been accordingly impressed upon the property the judgment shall stand affirmed, except as to proper assignments of error which may be claimed to have occurred in the determination here-in ordered. The district court should retain jurisdiction to do all things necessary in regard to the lien as it did in the judgment under review here.

Affirmed in part, reversed in part, and remanded.