886 F.2d 237
 ALEKNAGIK NATIVES LIMITED; Aleknagik City; Aleknagik
Village Council; Ekwok Natives Limited; Ekwok City
Council; Nondalton Native Corporation; Nondalton City
Council; Nondalton Village Council, Plaintiffs-Appellees,
v.
UNITED STATES of America; Donald P. Hodel, Secretary of the
Interior; Gail Ozmina, Townsite Trustee,
Defendants-Appellants,
and
English Bay Village Council; Port Graham Village Council,
Defendants-Intervenors-Appellees.
 No. 87-4188.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 13, 1989.
Decided Sept. 22, 1989.
 
 Robert L. Klarquist and Vicki L. Plaut, Dept. of Justice, Washington, D.C., for defendants-appellants.
 David C. Fleurant and Carol H. Daniel, Anchorage, Alaska, for defendants-intervenors-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before WRIGHT, TANG and WIGGINS, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 The Native Alaskan communities of English Bay and Port Graham are located in the southwestern tip of the Kenai Peninsula in Alaska, approximately 140 miles south of Anchorage. The State of Alaska recognizes the Village Councils in English Bay and Port Graham as the governing entities in these unincorporated communities.
 
 
 2
 On July 17, 1987, the district court ordered the transfer of title of unoccupied townsite lands[1] held by a Townsite Trustee to the Village Councils. On appeal, the government challenges this order, arguing that such a transfer is inconsistent with the Alaska Native Townsite Act ("ANTA") and with a Department of the Interior regulation which permits the transfer of such lands only to incorporated entities.
 
 
 3
 The Village Councils argue that the regulation frustrates the purpose of the ANTA as well as the Federal Land Policy and Management Act ("FLPMA"), and that in the absence of municipal corporations in these communities, the Village Councils are the appropriate entities to receive title to the land.
 
 
 4
 We affirm and hold that the district court did not err in ordering the transfer of title.
 
 I.
 
 5
 A. In 1891, Congress enacted the Alaska Townsite Act ("ATA") permitting the creation of towns out of public lands in Alaska by having townsite trustees hold land in trust. The ATA directed the Department of the Interior to "provide by regulation for the proper execution of the trust in favor of the inhabitants of the town site ..." 26 Stat. 1099.
 
 
 6
 Initial federal regulations established that the ATA included Alaskan Natives, Non-Mineral Entries in Alaska, 12 Pub.Lands Dec. 583 (1891). Natives, not then recognized as U.S. citizens, however, protested that the ATA oppressed them by permitting taxation of their property without affording them full participation in government. See Wrangell Townsite, 37 Pub.Lands Dec. 334, 334-35 (1908) ("[The Natives] have no voice in the government of the town.... They also object to being taxed for the government of the town or for the support of schools, as their children are not permitted to attend said schools."). The regulations were amended in 1908 to prohibit expressly the conveyance of townsite lots to Alaska Natives pending "future legislation." Alaskan Townsites--Status and Rights of Indian Occupants, 37 Pub.Lands Dec. 337, 338 (1908).
 
 
 7
 In 1916, the Secretary of the Interior again amended the regulations and provided for the disposal of residual townsite lands in non-Native, incorporated communities:
 
 
 8
 After the public sale and upon proof of incorporation of the town, all lots then remaining unsold will be deeded to the municipality, and all municipal public reserves will, by a separate deed, be conveyed to the municipality in trust for the public purposes for which they were reserved.
 
 
 9
 Circular Instructions Relating to the Acquisition of Title to Public Lands in the Territory of Alaska, 45 Pub.Lands Dec. 227, 244 (1916). This regulation ("1916 regulation") remains in effect today, 43 C.F.R. Sec. 2565.7 (1987), and is at the crux of the instant appeal.
 
 
 10
 B. In 1926, Congress passed the ANTA to extend the townsite laws to Alaska Natives. 44 Stat. 629. Alaska Governor George Alexander Parks had argued that "[t]here is nothing that would give [the Alaska Natives] more encouragement in their progress toward municipal government in their own settlements than the ownership of the land." Report of the Governor of Alaska to the Secretary of the Interior 37-38 (1925). One ANTA regulation provided that a trustee be designated to accomplish the purposes of the law. Survey and Disposition of Indian Possessions in Trustee Town Sites, Alaska, 51 Pub.Lands Dec. 501, 503 (1926). This regulation still applies to the townsites of Port Graham and English Bay. 43 C.F.R. Sec. 2564.0-4(b).
 
 
 11
 C. On October 21, 1976, in passing the FLPMA, Congress repealed the ATA and the ANTA. 90 Stat. 2744, 2789-90 (1976). Section 701 of the FLPMA contained a general savings clause which protected land use rights existing at the time of the enactment of the FLPMA. Pub.L. 94-579. We held that the FLPMA closed all townsites to new claims, but preserved "valid existing rights." Aleknagik Natives, Ltd. v. United States, 806 F.2d 924, 927 (9th Cir.1986), aff'g 635 F.Supp. 1477 (D.Alaska 1985).
 
 II.
 
 12
 In 1977, three Native village corporations, established pursuant to the Alaska Natives Claims Settlement Act ("ANCSA"), 43 U.S.C. Sec. 1607(a), and other plaintiffs,[2] brought a quiet title and ejectment action against the United States, the Secretary of the Interior, and the trustee for the townsites located within the various communities including English Bay and Port Graham (the "federal defendants").[3] The district court dismissed the case for failure to exhaust administrative remedies. Aleknagik Natives, Ltd. v. Andrus, No. A-77-200 (D.Alaska August 16, 1978). On appeal, we reversed and remanded. 648 F.2d 496 (9th Cir.1980). Following the remand, the Port Graham and English Bay Village Councils ("Village Councils") intervened, and adopted the position of the federal defendants in arguing that the lands were available under the ANCSA, 43 U.S.C. Sec. 1610(a)(1), and that the Townsite Trustee had an ongoing responsibility to administer the lands, despite the repeal of the townsite acts.
 
 
 13
 The district court granted summary judgment in favor of the federal defendants. 635 F.Supp. 1477 (D.Alaska 1985). The court held that unoccupied lands within the boundaries of a townsite were not available to ANCSA village corporations, and also that lands within pre-FLPMA townsites were unavailable to individual members of the communities for whose benefit the trust was established. On appeal, we affirmed. 806 F.2d 924 (9th Cir.1986). One question then remained unanswered: whether unincorporated Native village councils are entitled to receive title to these residual lands.
 
 
 14
 The Village Councils filed a Motion for Reconsideration with the district court, asking whether village councils in unincorporated communities are eligible to receive a conveyance of residual townsite lands. The district court stayed consideration of the motion for reconsideration and ordered the Village Councils to make formal application to the Townsite Trustee for the transfer of the lands. The Townsite Trustee reaffirmed her position that she had no authority to transfer the land to unincorporated entities. The district court reinstated the Motion for Reconsideration, and on July 17, 1987, ordered the Trustee to convey the residual trust lands to the Village Councils. The government appeals.
 
 III.
 
 15
 A. The central question in this appeal is whether the 1916 regulation, which provides that residual townsite lands be transferred to incorporated entities, bars the unincorporated Village Councils from taking title to the approximately 357 acres of land at issue. We affirm the district court and hold that the Village Councils may obtain title.
 
 
 16
 B. It is apparent that the 1916 regulation is inapplicable to the instant case. Section 1 of the ANTA did expressly provide that deeds are to be issued pursuant to the ATA and its regulations, which included the 1916 regulation. 44 Stat. 629, Section 3 of the ANTA, however, which pertains to this appeal, makes no mention of the applicability of any regulations:
 
 
 17
 That whenever [the Secretary of the Interior] shall find nonmineral public lands in Alaska to be claimed and occupied by Indians or Eskimos of full or mixed blood, natives of Alaska, as a town or village, the Secretary of Interior is authorized to have such lands surveyed into lots, blocks, streets, and alleys, and to issue a patent thereof to a trustee who shall convey to the individual Indian ... the land so claimed and occupied ...
 
 
 18
 We must assume that Congress' omission in Section 3 of the ANTA of any mention of the applicability of regulations was intentional. Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).
 
 
 19
 An examination of the historical context further underscores this interpretation. Under the ATA, non-Native townsites could obtain title to their residual townsite land only by providing proof of incorporation. Circular Instructions, 45 Pub.Lands Dec. at 244. According to Alaska law, communities with at least 400 residents could petition for incorporation. 1923 Alaska Sess.Laws, ch. 97, Sec. 1. As the government concedes, however, non-citizens could not petition or vote for incorporation. Id. Although Alaska Natives were purportedly made citizens of the United States under the Citizenship Act of 1924, 43 Stat. 253, the question of whether Alaska Natives were encompassed within the 1924 law was not resolved until 1932. See Status of Alaska Natives, 53 Int.Dec. 593, 605-606 (1932). Until 1932, therefore, when Alaska Natives were finally recognized as United States citizens, they could not incorporate their communities. 1923 Alaska Sess.Laws, ch. 97, Sec. 2.
 
 
 20
 When Congress enacted the ANTA in 1926, it extended the townsite laws to Alaska Natives. Considering that Alaska Native communities could not become incorporated when ANTA was enacted in 1926, however, it would certainly violate the purpose of the ANTA if Alaska Native communities were barred from getting title to residual townsite lands on the grounds of not being incorporated. Thus, it would be inappropriate for us to apply the 1916 regulation which bars unincorporated entities from obtaining title to residual townsite land in Native Alaska communities.
 
 
 21
 C. Furthermore, in repealing the townsite laws with the enactment of the FLPMA, Congress manifested an intent "to promote modern land-use planning and to eliminate the random community growth that had been typical under the federal townsite laws." Aleknagik, 635 F.Supp. at 1499. In furtherance of this Congressional intent with respect to the residual townsite lands, there is no meaningful difference between unincorporated village governments and incorporated municipalities.
 
 IV.
 
 22
 The government argues that even if the 1916 regulation requiring incorporation is inconsistent with the ANTA, the district court exceeded its authority by ordering the transfer of land to the Village Councils. We disagree.
 
 
 23
 The district court's authority to adjudicate the claims of the Village Councils is derived from 25 U.S.C. Sec. 345. See Hy-Yu-Tse-Mil-Kin v. Smith, 119 F. 114, 115 (9th Cir.1902), aff'd, 194 U.S. 401, 24 S.Ct. 676, 48 L.Ed. 1039 (1904). That statute, originally enacted in 1894, provides, in part, that
 
 
 24
 All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereof in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty ...; and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, ...
 
 
 25
 25 U.S.C. Sec. 345. Indeed, we have previously noted that this statute provides the district court with an independent basis of jurisdiction. See, e.g., United States v. Pierce, 235 F.2d 885, 887-89 (9th Cir.1956). No valid purpose would be served by remanding this matter to the Department of the Interior.
 
 
 26
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 At issue are approximately 288 acres in Port Graham and 69 acres in English Bay
 
 
 [2]
 The plaintiffs were the Aleknagik City Council, the Aleknagik Village Council, and Aleknagik Natives Ltd.; the Ekwok City Council, the Ekwok Village Council, and Ekwok Natives Ltd.; and the Nondalton City Council, the Nondalton Village Council, and the Nondalton Native Corporation
 
 
 [3]
 The remaining defendants were individual non-Natives who entered or who intended to enter the townsite land