BONIFER et al. v. SMITH et al.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

No. 1,588.

1. INDIANS (§ 13*)—ALLOTMENT OF LANDS—CONSTRUCTION OF ACT—RESIDENCE.

The right of recognized members of the Walla Walla, Cayuse, or Umatilla tribes or bands of Indians to allotments of land on the Umatilla reservation, under Act March 3, 1885, c. 319, 23 Stat. 340, was not dependent on their being at the time resident on the reservation, or even upon the lands ceded to the United States by such tribes by the treaty of 1855 (Act June 9, 1855, 12 Stat. 945).

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

2. INDIANS (§ 13*)—ALLOTMENTS OF LANDS—RIGHT TO ALLOTMENTS THROUGH INDIAN MOTHER.

An Indian woman, who was a member of a tribe to which lands were authorized to be allotted in severalty, although married to a white man, was herself the head of a family, and her children were entitled to allotments as members of the tribe.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

3. INDIANS (§ 13*)—ALLOTMENT OF LANDS—ESTATE ACQUIRED BY SELECTION—EFFECT OF REJECTION OF CLAIM.

Where allotments of land were rightfully selected for Indian children on the Umatilla reservation, under Act March 3, 1885, c. 319, 23 Stat. 340, they acquired an estate of inheritance therein at that time, and the lands descended to their heirs on their death, although their right to such allotments was erroneously denied by the Interior Department, and not established until after their death.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

Appeal from the Circuit Court of the United States for the District of Oregon.

For opinion below, see 154 Fed. 883.

This is an appeal from a final decree rendered in a suit in which the bill, in substance, alleged that Philomme Smith is a full-blooded Indian woman, a member of the Walla Walla band of Indians, residing upon the Umatilla Indian reservation; that F. A. Smith, a white man, is her husband; that Charles Smith, Maggie Smith, and Janie Smith are their children and members of the Walla Walla band of Indians residing upon the said reservation; that Elizabeth Smith is their granddaughter, being a daughter of James Smith, deceased, who was their son; that George Smith, Sophia Smith, and Lura Smith were their children who had died leaving no lineal descendants, nor wife nor husbands, surviving, and that F. A. Smith is the sole heir of said deceased children according to the laws of Oregon; that about April 1, 1891, under authority of the act of Congress approved March 3, 1885 (Act March 3, 1885, c. 319, 23 Stat. 340), the President of the United States caused lands upon the Umatilla Indian reservation to be allotted in severalty to the Indians residing thereon, and for that purpose appointed commissioners to make the allotment; that, at the time when the commissioners entered upon the discharge of their duties, said Philomme Smith, as the head of her family, consisting of her husband and her said children, was, and for a long time prior thereto

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had been, settled upon and in the actual possession of, and had valuable improvements upon, certain described lands in the reservation, by and with the consent of the head men of said tribe or band of Indians, and that said Philomme Smith, as the head of her family, went to said commissioners and made selections of land for herself and her children, who were then minors; that said commissioners refused to allot said lands to the said children, as requested, but proceeded to allot the same to Margaret Bourner and to Martha Herbert, now Martha Bonifer, which allotments were thereafter approved by the Honorable Secretary of the Interior, and thereafter trust patents were issued to said allottees, which provide that the United States does and will hold said lands in trust for said allottees for 25 years; that, at the time when said allotments were made, the said Margaret Bourner and Martha Bonifer knew that the appellees were in the actual possession of said lands; that the Secretary of the Interior thereafter wrongfully caused the said patentees or their heirs to be put in possession of the said lands. The bill prayed for a decree awarding to the appellees the lands so selected for the said children of F. A. and Philomme Smith. A demurrer was interposed for want of equity in the bill, and for want of jurisdiction of the subject-matter of the suit. The demurrer was overruled. Smith et al. v. Bonifer et al. (C. C.) 132 Fed. 889. The defendants in the bill then answered denying all the material allegations thereof, and praying for a dismissal of the same. Upon the evidence taken the court found for the appellees, and awarded them the relief prayed for.

Chamberlain & Thomas, for appellants.

R. J. Slater and J. T. Hinkle, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellants contend, first, that neither Philomme Smith nor any other of the appellees was entitled to any allotment whatsoever upon the Umatilla Indian Reservation; and, second, that, conceding the existence of such a right, the deceased children of Philomme Smith were not at the time of their death possessed of an interest capable of transmission by inheritance. As to the first of these contentions, it is to be observed, first, that it is conceded that the mother of Philomme Smith was a member of the Walla Walla tribe of Indians. It is contended, however, that she severed her tribal relations; that her daughter Philomme never resided upon the reservation, and is not a tribal Indian, and was therefore not one of those for whom the allotment of land on that reservation was authorized to be made. The testimony shows that the mother of Philomme married one Thomas Tawakawn, an Iroquois Indian who had probably come into the Oregon country from the east as a voyageur engaged in trapping for the Hudson Bay Company. After his marriage to Philomme's mother, he lived in the Willamette Valley, but thence made occasional expeditions into California and elsewhere. The evidence is conflicting as to the place of Philomme's birth. The trial court reached the conclusion, and the weight of the testimony, we think, sustains it, that she was born within the region occupied by the Walla Wallas, and that while an infant she was brought by her parents into the Willamette Valley. While living in the Willamette Valley, when she was about six years of age, her mother married a French-Canadian by the name of Sauvé. On the death of Sauvé, which occurred a short time thereafter, his widow, with Philomme, moved to The Dalles, in Oregon. At that time Philomme was about fourteen years of age. There she married Smith,

her present husband, and there she resided with her family until they removed to the reservation, in 1888. The evidence indicates that, at the time when the treaty between the United States and the confederated bands and tribes of Walla Wallas, Cayuses, and Umatillas was entered into, Philomme was about nine years of age. One of the objects accomplished by the treaty was to extinguish the Indian title to the large area of lands described therein, and to set aside the Umatilla Reservation for the exclusive use of the members of the three confederated tribes. At that time there can be no question that Philomme's mother was a Walla Walla Indian and was a member of that tribe. There is nothing in the evidence to show that she ever renounced her allegiance to the tribe or severed her relations therewith. No such severance resulted from her marriage to the Iroquois Tawakawn, nor from her marriage to the French-Canadian Sauvé. Tawakawn, never took her with him to live with his own tribe, nor did Sauvé ever take her from the Oregon territory. At the date of the treaty and of the setting aside of the Umatilla reservation, Philomme and her mother were both entitled, if they had so desired, to reside upon the reservation.

The right of Philomme to the land so selected by her for her individual use is not involved in the present suit. That was finally determined in the case of Hy-yu-tse-mil-kin v. Smith, 194 U. S. 401, 24 Sup. Ct. 676, 48 L. Ed. 1039. The court held that it was not necessary to the right to allotment that the individual Indian of the tribes mentioned in the act of 1885 should be actually residing upon the reservation at the time of the passage of that act. The court said:

"If the individual were a member of the tribe or band, recognized as such by his chiefs, it was not necessary that such person should be an actual resident of the reservation when the act was passed. The fact found is that the appellee herein is a full-blooded Indian woman, and was at all the times mentioned a member of the Walla Walla band or tribe of Indians, and at the time of the original allotment resided upon the reservation in the state of Oregon. When such a large percentage of allottees upon this reservation resided, as did the appellee, elsewhere than actually upon the reservation at the date of the passage of the act of 1885, it cannot be that the act passed was intended to limit the right of an allotment to those actually residing on the reservation to the exclusion of the majority of the members of the different bands or tribes. The fact of such nonresidence is presumed to have been known to Congress, and the act should be construed with reference to that knowledge."

It is contended on behalf of the appellants that the decision in that case recognized, at least by inference, that residence within the limits of the territory ceded by the Indians to the United States by the treaty of 1855 was a necessary condition precedent to allotment, and that inasmuch as Philomme was, at the date of the treaty, residing at The Dalles, outside of the lands ceded to the United States by the treaty, and at a distance of 50 miles therefrom, she and her children were not entitled to allotments within the reservation. It is true that in the opinion of the court in that case the fact is more than once alluded to that the Indians of the confederated Indian bands were residing off the reservation, but within the country theretofore ceded to the United States by the treaty of 1855 (Act June 9, 1855, 12 Stat. 945). The

court, however, was alluding to the facts of the case as they existed or were supposed to exist. We are not justified in assuming that it was the intention to lay down the rule that the allotment was not intended for the benefit of Indians who at the time were residing neither on the reservation nor within the limits of the lands included in the cession of territory to the United States by the treaty. The Indian right and title to the ceded land was extinguished by the treaty. An Indian residing within the limits of land so relinquished was residing on land to which he could claim no title or interest, save and except the right to hunt, fish, gather roots and berries, and pasture stock in common with citizens, which was reserved to him by the treaty, and it is impossible to find any ground or principle on which to distinguish the status of such an Indian from that of other Indians belonging to the tribes and living without the limits of the ceded lands.

The act of 1885 provides for an allotment to each head of a family, each single person over the age of 18 years, each orphan child under the age of 18 years, and each child under 18 years of age not otherwise provided for. Philomme, although married to a white person, was herself the head of a family. Hy-yu-tse-mil-kin v. Smith, 194 U. S. 401, 24 Sup. Ct. 676, 48 L. Ed. 1039. It appears that she was advised by certain chiefs of the Walla Walla and Cayuse tribes to come upon the reservation and make selections for allotments to herself and her children, and that she was recognized by these chiefs and by the chiefs of the Umatillas as being a member of the Walla Walla tribe. With the consent of the chiefs she selected the land in controversy with the intention of having the same allotted to her children, and she and her husband improved it, erected a house thereon, and erected barns upon the quarter section selected by Philomme for herself, and inclosed the whole by a fence. Under the authority of the Hy-yu-tse-mil-kin decision, there can be no doubt that the children were entitled to allotments of the land so selected and improved.

But it is urged that the deceased children of Philomme had not at the time of their death an estate in the lands which could be inherited. They died after the lands had been selected for them, and while their rights to the allotments were being contested in the Department of the Interior. If the selections so made by Philomme were prior in right to those of the appellants, and should have been allowed as made, equity will look upon that as done which ought to have been done, and will dispose of the rights of the parties as if the allotments had been allowed when the selections were made.

In Lytle et al. v. State of Arkansas et al., 9 How. 314, 13 L. Ed. 153, the court said:

"It is a well-established principle that where an individual, in the prosecution of a right, does everything which the law requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect it."

This was said in a case in which a pre-emption right to government land was asserted, and the pre-emptor had done all that the law required him to do, but the land officers awarded the land to another. Several years thereafter the court, by a decree, awarded the land to

the heirs of the original claimant. The doctrine of that case was affirmed in the Yosemite Valley Case, 15 Wall. 77, 21 L. Ed. 82. Considering, therefore, the rights of the parties as if the allotment had been allowed when the selections were made, there can be no question that upon such allotments the allottees acquired an estate of inheritance. This court has so held in the case of Beam v. United States et al. (C. C. A.) 162 Fed. 260.

The decree is affirmed.