LEECY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 18, 1911.)

No. 3,507.

INDIANS (§ 13*)—INDIAN LANDS—ADDITIONAL ALLOTMENT—TIMBER RESERVE.
Where complainant, a Chippewa Indian, having received an allotment in the White Earth reservation, was entitled to an additional allotment under Act April 28, 1904, c. 1786, 33 Stat. 539, and in 1907 selected and applied for 80 acres out of a certain township in satisfaction of her claim, the Interior Department had no authority to decline her application on the ground that such section had been reserved as a sawmill reserve to furnish lumber with which to construct houses for Mille Lac Indians removing to the White Earth reservation, according to the government's agreement of August 30, 1902, to build houses on lands allotted to the Mille Lac Indians in order to induce them to remove to such reservation; there being no statutory authority authorizing the withdrawal of reservation lands, otherwise subject to entry, for that purpose.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. § 13.*]

Appeal from the Circuit Court of the United States for the District of Minnesota.

Suit by Jane Leecy against the United States to recover an additional allotment in the White Earth reservation. From a judgment overruling plaintiff's motion for judgment on the pleadings and dismissing the bill, she appeals. Reversed, with directions.

George B. Edgerton (Edgerton & Edgerton, on the brief), for appellant.

Charles C. Houpt, U. S. Atty.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. The complainant, an Indian, has all her life been a member of the band of Chippewa of the Mississippi and has all her time resided on the White Earth Indian reservation in Minnesota as created by the treaty proclaimed April 18, 1867. She received an allotment of 80 acres upon this reservation. There is no dispute that she was entitled to an additional allotment of 80 acres under the act to provide allotments to Indians on the White Earth reservation in Minnesota of April 28, 1904. 33 Stat. 539, c. 1786. In 1907 she selected and applied for the E. ½ of the N. W. ¼ of section 24 in township 143, range 39, in satisfaction of her claim. Her application was ultimately denied, and she brings this action to secure the allotment to her of the land described under Act Feb. 6, 1901, c. 217, 31 Stat. 760, entitled "An act amending the act of August fifteenth, eighteen hundred and ninety-four, entitled 'An act making appropriations for current and contingent expenses of the Indian Department and fulfilling treaties and stipulations with various Indian tribes for the fiscal year ending June thirtieth, eighteen hundred and ninety-five,' and for other purposes."

The land in question was and is chiefly valuable for pine timber growing thereon. Under the general allotment law of February 8, 1887 (24 Stat. 388, c. 119), and the act of January 14, 1889 (25 Stat. 642, c. 24), allotments were to be made on lands "advantageous for agricultural and grazing purposes." The Interior Department held that land chiefly valuable for the timber growing thereon did not come within the description of lands advantageous for agricultural and grazing purposes and therefore excluded such lands from allotment. The act of April 28, 1904 (33 Stat. 539, c. 1786), commonly known as the "Steenerson Act," abrogated this limitation. United States v. Fairbanks, 171 Fed. 337, 96 C. C. A. 229. In the Indian appropriation law passed May 27, 1902 (32 Stat. 245, c. 888), Congress authorized the Indians on the Mille Lac reservation in Minnesota to remove to the White Earth reservation, conferred upon them the right to allotments there, and appropriated $40,000 to compensate them for the improvements they had upon the Mille Lac reservation. Under this authority a large number of them moved to the White Earth reservation.

The government in its answer sets up the act of May 27, 1902, with reference to the removal of the Indians from the Mille Lac reservation, and alleges: That for the purpose of obtaining the consent of said Indians to the acceptance of the amount appropriated in payment for their improvements, and to secure their removal to said White Earth reservation, James McLaughlin, United States Indian inspector, and Simon Michelet, United States Indian agent of said White Earth Indian reservation, by authority and direction of the Secretary of the Interior, entered into a certain agreement with said Indians dated August 30, 1902, which, among other stipulations, contained a promise and agreement made to said Indians whereby the United States undertook to construct and erect suitable dwelling houses upon all allotments which said removal Mille Lac Indians might thereafter select on said White Earth Indian reservation. That said promise to so provide and erect said dwelling houses for said Indians was so made as an additional inducement to their removal to said White Earth reservation. That thereafter, and long prior to the attempted selection of said lands as an allotment, the said Simon Michelet, as agent of said White Earth Indian reservation, set apart section 24, with other lands, as and for a sawmill reserve, and by that means reserved said section with others from allotment purposes. That the withdrawal of said section 24, with other lands, from allotment purposes, and the establishment of the same as a sawmill reserve, was duly approved by the Secretary of the Interior, and thereafter said sawmill reserve was held and treated by the Secretary of the Interior as lands specially set apart and devoted to the needs of the Indian service, and to provide the necessary lumber and material for the erection of dwelling houses for removal Mille Lac Indians in fulfillment of the provisions of the agreement of August 30, 1902. That all the land embraced in said sawmill reserve, including said section 24, was at the time of the withdrawal thereof covered with valuable pine timber, and that the land described in the complaint is a portion

of said sawmill reserve, contains a valuable growth of pine timber, which is necessary for the use of the Indians and of the officials of the Indian Office and for the dwellings of said Mille Lac removal Indians as aforesaid. Defendant further avers that the withdrawal of certain lands from allotment purposes is temporary, and is intended to cease when the timber thereon has served the purpose for which said withdrawal was originally made, and that in the opinion of the Secretary of the Interior it is still necessary to maintain such reserve for the uses and purposes before mentioned, and that the order heretofore made establishing said reserve has been in no way revoked or modified.

The complainant moved for judgment on the pleadings, and the motion was overruled, the plaintiff's bill dismissed, and she appeals.

There is only one question in this case, and that is: Did the Indian agent or the Secretary of the Interior have any rightful authority to withdraw the land in question from allotment for the purposes set up in the answer. In Oakes v. United States, 172 Fed. 305, 97 C. C. A. 139, the government in its answer set up that lands there in controversy had been set apart for allotment to Indians who might be removed from the Mille Lac reservation. That defense was abandoned, but it must not be confused with the defense here. There is no claim made that this land has been set apart for allotment to the Mille Lac Indians, but that the agents of the government, as an inducement not expressly authorized by the act of May 27, 1902, but by authority and direction of the Secretary of the Interior, made an agreement with the Mille Lac Indians that the United States would construct suitable dwelling houses upon all allotments made them on the White Earth reservation, and that the Indian agent at the White Earth reservation, who was one of the government agents in the making of said agreement, set apart the section in which plaintiff seeks her allotment as a sawmill reserve and as a place from which to obtain timber among other purposes to build houses on other lands allotted or to be allotted to Indians from the Mille Lac reservation, and that the action of the Indian agent was approved by the Secretary of the Interior.

The question is thus at once presented: What authority had the Indian agent or the Secretary of the Interior to withdraw section 24 from allotment? If the original agreement of August 30, 1902, to build houses upon the lands allotted to the Mille Lac Indians, ought to be held binding upon the government, it doubtless has the ability to perform it, whether the timber upon the 80 acres in controversy is reserved or not. The following statutes are cited as conferring the authority attempted to be exercised:

The general allotment act of February 8, 1887 (24 Stat. 388, c. 119), and particular reliance is placed upon that portion of it which reads as follows:

"Sec. 3. That the allotments provided for in this act shall be made by special agents appointed by the President for such purpose, and the agents in charge of the respective reservations on which the allotments are directed to be made, under such rules and regulations as the Secretary of the Interior may from time to time prescribe, and shall be certified by such agents to the Commissioner of Indian Affairs, in duplicate, one copy to be retained in the

Indian Office and the other to be transmitted to the Secretary of the Interior for his action, and to be deposited in the General Land Office."

"Sec. 5. That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the names of the allottees."

The provision in the act of January 14, 1889 (25 Stat. 642, c. 24), commonly known as the "Nelson Act," that the allotments therein provided for shall be "in conformity with the act of February eighth, eighteen hundred and eighty-seven."

Section 441, Revised Statutes (U. S. Comp. St. 1901, p. 252):

"The Secretary of the Interior is charged with the supervision of public business relating to the following subjects: * * * Third—The Indians."

Section 463, Revised Statutes (U. S. Comp. St. 1901, p. 262):

"The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs, and of all matters arising out of Indian relations."

None of these provisions conferred the power claimed. It is not necessary to consider whether the provisions in the general allotment law quoted control allotments under the act of April 28, 1904. It is true, if this law applies, allotments must be "made under such rules and regulations as the Secretary of the Interior may from time to time prescribe."

The power of Congress over the whole subject of our relations to the Indians is plenary. Lone Wolf v. Hitchcock, 187 U. S. 553, 23 Sup. Ct. 216, 47 L. Ed. 299. But it does not follow, because Congress makes a valid law and intrusts its execution to the head of an executive department, with power to make rules and regulations for its execution, that he is thereby clothed with plenary power to make such rules and regulations as would not aid in the execution of the law but nullify its provisions. In Williamson v. United States, 207 U. S. 462, 28 Sup. Ct. 177 (52 L. Ed. 278), the Supreme Court said:

"True it is that in the concluding portion of section 3 of the timber and stone act [Act June 3, 1878, c. 151, 20 Stat. 90 (U. S. Comp. St. 1901, p. 1546)] it is provided that 'effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the Commissioner of the General Land Office'; but this power must in the nature of things be construed as authorizing the Commissioner of the General Land Office to adopt rules and regulations for the enforcement of the statute, and cannot be held to have authorized him, by such an exercise of power, to virtually adopt rules and regulations destructive of rights which Congress had conferred."

Congress authorized the allotment of these lands, and if the Secretary of the Interior could under his authority withdraw a portion of them from allotment he could withdraw substantially all of them, if that seemed in his judgment best, and under the contention of the government he would be executing an allotment law under rules and regulations prescribed, when in fact he nullified the law by withdrawing the very lands from allotment which Congress had authorized to be so distributed. The law was to be executed under, not nullified by, rules and regulations.

The power to withdraw the land in question cannot be found in the provision that allotments should be certified to the Secretary of the Interior for his action, in the one providing for his approval of allotments before patent, in section 441, R. S., charging the Secretary of the Interior with supervision of the public business relating to the Indians, or in section 463, R. S., charging the Commissioner of Indian Affairs under the Secretary of the Interior with the management of Indian affairs and matters arising out of Indian relations. If under any of these laws the Secretary of the Interior could withdraw lands from allotment, or upon his judgment that lands authorized to be allotted by Congress ought not to be allotted refuse to approve an allotment when submitted for action, the very statute under which this action was brought, and which was enacted after all the statutes relied on were passed, would be practically nullified. The act of February 6, 1901 (31 Stat. 760, c. 217), provides:

"That all persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any act of Congress, may commence and prosecute or defend any action, suit or proceeding in relation to their right thereto in the proper Circuit Court of the United States; and said Circuit Courts are hereby given jurisdiction to try and determine any action, suit or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty, (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant)."

It is manifest that no Indian would have occasion to seek relief under this statute until his right had been denied by the Interior Department. It is certain that the purpose of this statute was to confer substantial rights upon Indian claimants, and yet it is insisted that, as allotments must be reported to the Secretary of the Interior for his approval, the absence of his approval would defeat the suit, when, of course, no one would want to bring a suit if he had that approval.

The claim of power under sections 441 and 463, R. S., is subject to the same criticism. Why authorize a suit, if either of the sections conferred upon the Secretary of the Interior or upon the Commissioner of Indian Affairs general authority conclusive on the courts? Certainly Congress did not mean to authorize the bringing of wholly futile actions.

A strong argument is made tending to show that power should be vested in the President or some other officer of the government to withhold from allotment lands specially needed for use of the tribe as a whole, but such arguments should be addressed to Congress rather than to the courts. If such a law would be wise, that is no reason why an executive department should make one, or the courts sustain it in doing so.

The case is reversed, with directions to the Circuit Court to set aside its former order, sustain the motion of the plaintiff, and enter a decree as prayed.