## UNITED STATES v. PAYNE.

(Circuit Court of Appeals, Ninth Circuit. December 4, 1922.)

No. 3897.

Indians ⚖️13—That land selected is valuable for timber not ground for refusing allotment.

Under General Allotment Act Feb. 8, 1887, § 1, as amended by Act Feb. 28, 1891, § 1 (Comp. St. § 4195), authorizing the President to cause allotments to be made from lands which may be advantageously utilized for agricultural or grazing purposes, the fact that an allotment selected by an Indian is in part heavily timbered, and until cleared is more valuable for timber than for agriculture or grazing, does not justify a refusal to make the allotment.

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by Tommy Payne against the United States. Decree for complainant, and the United States appeals. Affirmed.

Thos. P. Revelle, U. S. Atty., of Seattle, Wash., and W. W. Mount, Asst. U. S. Atty., of Tacoma, Wash.

Arthur E. Griffin and Arthur R. Griffin, both of Seattle, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and RUDKIN, District Judge.

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HUNT, Circuit Judge. From a decree directing the agents of the United States to issue to Tommy Payne, an Indian of the Quileute Tribe, a certificate of allotment to a certain tract of land in the Quinaielt Reservation, Wash., the United States appeals.

The present suit was brought under the act of 1894 (28 Stat. 305), as amended by Act Feb. 6, 1901 (31 Stat. 760 [Comp. St. § 4214]). Pursuant to a treaty made with the Quinaielt and other Indians, certain lands were reserved, to be surveyed and set apart for the "exclusive use" of the Indians. The treaty was made July 1, 1855, and concluded January 25, 1856, and was ratified March 8, 1859. 12 Stat. 971; 36 Stat. 1345.

In February, 1887 (24 Stat. 388), Congress passed an allotment act which was amended by Act Feb. 28, 1891, c. 383, § 1 (Comp. St. § 4195), and Act June 25, 1910, c. 431, § 17 (Comp. St. § 4199), providing that, in all cases where any tribe of Indians has been located upon any reservation created for their use by treaty, stipulation, act of Congress, or executive order, the President shall be authorized to cause the same to be surveyed or resurveyed, "whenever in his opinion any reservation or any part thereof may be advantageously utilized for agricultural or grazing purposes by such Indians, and to cause allotment to each Indian located thereon to be made in such areas as in his opinion may be for their best interests, not to exceed 80 acres of agricultural, or 160 acres of grazing land, to any one Indian."

About 1911, after survey made in 1910, through an allotting agent for the United States, Payne made a selection of the land here involved, and his name was recorded; but he has been excluded from the land. The land selected by Payne is in part heavily timbered and in part bottom land with clay soil; but there is evidence that the value of the timber is greater than the value of the land for agriculture or grazing. Because of such value conditions, the government pleads that the land selected is not subject to allotment, and that therefore allotment has been refused; and Payne has been rightfully excluded. The question before us is whether, under the cited act of Congress of 1887, the land Payne selected should be excluded from allotment because it is in part heavily timbered, and until cleared is doubtless more valuable for timber than for agriculture or grazing.

The provisions of the treaty contained no restriction as to the character of the land to be located, and we do not regard the provisions of the act of 1887, supra, as so limiting the authority of the President that he may not order allotment of lands included in the reservation made under the treaty provisions and surveyed. The discretion of the President having been exercised in relation to survey, as contemplated by the treaty, the provisions of article 5 of the treaty, heretofore referred to, indicate that the makers of the treaty knew that clearing of the lands was as necessary as breaking up for cultivation. Furthermore, judicial knowledge will be taken of the fact that, when the treaty was made, the reservation was in a timbered area of the country.

The allotment statute of 1887 was general in character, and contemplated that lands held by the United States under Indian treaty

cessions might be surveyed or resurveyed when, in the opinion of the President, the lands could be advantageously used for farming or grazing purposes by the Indians. Whether the lands could be advantageously used for agriculture or grazing by the Indians was left to the opinion of the President; but, when the opinion that such advantageous use might be made was formed, then allotment is to be made, not necessarily of any given quantity, but only in such areas as in the opinion of the President may be for the best interests of the Indians, not to exceed 80 acres for agricultural or 160 acres for grazing purposes to any one Indian. But, where survey has been made and selection has been made, the authority to allot cannot be made dependent upon the comparative value of the land for timber or agriculture or grazing purposes. Leecy v. U. S., 190 Fed. 289, 111 C. C. A. 254.

The construction outlined seems specially fair in the case of the Quileute Indians, who gave up a large area under assurances that they would have a reservation in the heavily timbered wilderness selected by them and the other makers of the treaty.

Our conclusion is that the Allotment Act of 1887 does not prevent the carrying out of the true intent of the treaty provisions, and that Payne is entitled to the land selected.

Decree affirmed.