**LEMIEUX v. UNITED STATES et al.**

(Circuit Court of Appeals, Eighth Circuit. October 18, 1926.)

No. 7306.

**1. Indians ⚖️13—Tribal Indian, residing off the reservation, held not entitled to allotment (Act Feb. 8, 1887, § 1 [24 Stat. 388]).**

Under Act Feb. 8, 1887, § 1 (24 Stat. 388), providing for allotment of land in a reservation in severalty to any "Indian located thereon," a tribal Indian, living apart from the tribe and off the reservation, was not entitled to an allotment therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Locate.]

**2. Indians ⚖️13—Approval of allotment by Secretary not merey ministerial, but essential to give vested right (Act Feb. 8, 1887 [24 Stat. 388]).**

Under the provision of Act Feb. 8, 1887 (24 Stat. 388), requiring allotments to be approved by the Secretary of the Interior, his action is

not merely ministerial, but involves a determination of the qualification and right of the allottee, and without his approval the allottee acquires no vested right in the land selected.

**3. Indians ⚖️13.**

At any time before the right of an allottee becomes vested in the land, Congress has power to change the manner of its allotment.

**4. Indians ⚖️27(4)—Suit by Indian to recover allotment held barred by laches.**

An Indian *held* barred by laches from maintaining suit for recovery of a claimed allotment, where the certificate of selection issued to him by the agent was subject to approval by the Secretary of the Interior, which was not obtained, and suit was not commenced until 35 years later, and 27 years after the land had been allotted to another Indian, to whom patent had issued.

Appeal from the District Court of the United States for the District of Minnesota.

Suit in equity by Peter Lemieux against the United States and Shah-bah-yaust. Decree for defendants, and complainant appeals. Affirmed.

Arnold, Hollister & Arnold, of Duluth, Minn., for appellant.

James A. Wharton, Asst. U. S. Atty., of St. Paul, Minn. (Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and W. C. Preus, of Minneapolis, Minn., on the brief), for appellees.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

JOHN B. SANBORN, District Judge. Peter Lemieux, the appellant, is a mixed-blood Chippewa Indian, a member of the Fond du Lac band of that tribe. He was born in 1851, in Wisconsin, near the city of Superior. His father was a mixed-blood and his mother a full-blood, both Chippewas and members of the same band. Lemieux has been enrolled as a member of the tribe and has participated in every payment made by the government to it and its members since his birth. He has never resided upon the Fond du Lac reservation in the state of Minnesota, except possibly for a few months at the time he selected the allotment hereinafter referred to. At the time of selection of this allotment, his wife and children lived in the city of Superior, Wis., and he and they have resided there since that time.

The boundaries of the present Fond du Lac reservation in Minnesota were fixed by the Treaty of September 30, 1854, article 2, § 4 (10 Statutes at Large, 1109). The treaty, after fixing the boundaries, provides

(article 2, § 7): "Each head of a family or single person over twenty-one years of age at the present time of the mixed bloods, belonging to the Chippewas of Lake Superior, shall be entitled to eighty acres of land, to be selected by them under the direction of the President, and which shall be secured to them by patent in the usual form."

Article 3 provides: "The United States will define the boundaries of the reserved tracts, whenever it may be necessary by actual survey, and the President may, from time to time, at his discretion, cause the whole to be surveyed, and may assign to each head of a family or single person over twenty-one years of age, eighty acres of land for his or their separate use; *and he may,* at his discretion, as fast as the occupants become capable of transacting their own affairs, issue patents therefor to such occupants, with such restrictions of the power of alienation as he may see fit to impose."

On November 26, 1884, and on November 27, 1887, schedules of allotments of lands to Indians made under the terms of this treaty were approved by the President. On February 8, 1887, Congress passed the General Allotment Act, which is entitled "An act to provide for the allotment of lands in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the territories over the Indians, and for other purposes." 24 Statutes at Large, 388. Section 1 provides in part:

"That in all cases where any tribe or band of Indians has been, or shall hereafter be, located upon any reservation created for their use, either by treaty stipulation or by virtue of an act of Congress or executive order setting apart the same for their use, the President of the United States be, and he hereby is, authorized, whenever in his opinion any reservation or any part thereof of such Indians is advantageous for agricultural and grazing purposes, to cause said reservation, or any part thereof, to be surveyed, or resurveyed if necessary, and to allot the lands in said reservation in severalty to *any Indian located thereon.*"

Section 4 (Comp. St. § 4198) provides:

"That where any Indian not residing upon a reservation, * * * shall make settlement upon any surveyed or unsurveyed lands of the United States not otherwise appropriated, he or she shall be entitled, upon application to the local land office for the district in which the lands are located, to have the same allotted to him or her, and to his or her children, in quantities and manner as provided in this act for Indians residing upon reservations; and when such settlement is made upon unsurveyed lands the grant to such Indians shall be adjusted upon the survey of the lands so as to conform thereto; and patents shall be issued to them for such lands in the manner and with the restrictions as herein provided."

On January 25, 1888, the appellant made claim to an allotment under the provisions of section 1 of the Act of February 8, 1887, and selected lot 6 and the northeast quarter of the southwest quarter of section 12 of township 49, range 19. He received from Tom Wall, United States special agent to allot lands to Indians, the following certificate:

"No. 132.

"La Pointe Agency, Jan'y 25, 1888.

"I hereby certify that Peter Lemieux, a member of the Fond du Lac Tribe of Indians, has selected as his allotment of land under the provisions of the Act of Congress approved February 8, 1887, the lot 6 and N. E. of S. W. of section 12 of township 49, range 19, containing 69.20 acres, subject to the approval of the Secretary of the Interior.

"Selection No. 132, dated Jan'y 25, 1888. Tom Wall, U. S. Special Agent to Allot Lands to Indians."

There was upon this land at that time 571,640 feet of merchantable timber. It is difficult, from the record, to tell who sold the timber, but there is no evidence that it was sold with the authority of the United States government. It was sold, however, with the knowledge and consent, apparently, of the Indian agent for the tribe, and, of its value, which the court determines to be $2,858.20, Peter Lemieux received $1,143.28, and the balance of $1,714.92 was paid into the treasury of the United States. The court below determined that Lemieux had sold the timber with the knowledge and consent of the agent, and his conclusion in that regard we think is justified. Lemieux claims that the value of the land without the timber was $15 an acre, and the court below finds that it was $10 an acre from the year 1888 to the year 1895.

The selection of this land by Lemieux or its allotment to him by Wall, the special agent, was never certified to the Commissioner of Indian Affairs or to the Secretary of the Interior, as provided by the act, and was never approved or disapproved, and no patent was ever issued to Lemieux for it. While the selection by and the allotting of lands to the Indians of the Fond du Lac

Tribe under the act of 1887 was proceeding and before it was completed, Congress passed the "Nelson Act" of January 14, 1889 (25 Statutes at Large, 642, c. 24). This act provides for the allotment of lands in severalty upon certain reservations in the state of Minnesota, and the ceding of other reservations by the Indians, the allotments to be made pursuant to the act of 1887. It contains this provision for the protection of the Indian allottees under the act of 1887 and the treaty of 1854:

"That in any case where an allotment in severalty has heretofore been made to any Indian of land upon any of said reservations, he shall not be deprived thereof or disturbed therein except by his own individual consent separately and previously given, in such form and manner as may be prescribed by the Secretary of the Interior." Section 1.

In 1895, Shah-bah-yaust, a Chippewa Indian of the Fond du Lac Band, selected this same land, under the provisions of the act of 1889. His selection was reported to and approved by the Secretary of the Interior and a patent was issued to him therefor. Lemieux on the 7th day of November, 1923, more than 35 years after he had made his selection and 27 years after the land had been allotted to Shah-bah-yaust, brought this action under the provisions of the Act of August 15, 1894 (28 Stat. 305), as amended by the Act of February 6, 1901 (31 Stat. 760 [Comp. St. §§ 4214, 4215]) to have it determined that he' is the owner of this allotment, and that the government has converted the timber which was originally upon it.

Briefly the contention of the appellant is that he was entitled to an allotment under the act of 1887, that he selected his allotment, and that, under the familiar rule "that where an individual, in the prosecution of a right, does everything which the law requires him to do, and fails to attain his right by the misconduct or neglect of a public officer, the law will protect it" (Lytle v. State of Arkansas, 9 How. 314, 13 L. Ed. 153; Smith v. Bonifer [C. C.] 132 F. 889; Smith v. Bonifer [C. C.] 154 F. 883; Bonifer v. Smith, 166 F. 846, 92 C. C. A. 604; Barney v. Dolph, 97 U. S. 652, 24 L. Ed. 1063; Cornelius v. Kessel, 128 U. S. 456, 9 S. Ct. 122, 32 L. Ed. 482; Ballinger v. Frost, 216 U. S. 240, 30 S. Ct. 338, 54 L. Ed. 464; United States v. Payne [C. C. A.] 284 F. 827; Payne v. Mexico, 255 U. S. 367, 41 S. Ct. 333, 65 L. Ed. 680), he is entitled to this allotment.

Three questions are involved in the consideration of this appeal:

(1) Was Lemieux one of those Indians entitled to an allotment upon the Fond du Lac reservation under section 1 of the act of 1887?

(2) Was this land allotted to him prior to the passage of the act of 1889?

(3) Under all of the circumstances, is his claim barred by laches?

All of these questions were answered adversely to the contentions of the appellant by the court below, and we think the court was correct in its conclusions.

[1] Section 1 of the act of 1887 gave the right to an allotment to an Indian "located" upon the reservation; in other words, to a reservation Indian. Section 4 gave to the nonreservation Indians the right to an allotment of other public lands. The plan seems to have been to grant to those Indians whose location was upon the reservation the right to allotments in severalty thereon, but not to extend this right to those who had never been located upon it. Lemieux was at no time located upon the reservation, except at the time he made his selection and sold the timber upon the selected lands. So far as residence was concerned, he was not then located upon it, because he was living in Superior, had left his family there, and, after he received his money, returned to them, and never thereafter came back to the reservation. He cites the following cases in support of his contention that he was entitled to an allotment under section 1: Hy-Yu-Tse-Mil-Kin v. Smith, 194 U. S. 401, 24 S. Ct. 676, 48 L. Ed. 1039; Oakes v. United States, 172 F. 305, 97 C. C. A. 139; Fairbanks v. United States & Warren v. United States, 223 U. S. 215, 32 S. Ct. 292, 56 L. Ed. 409; La Roque v. United States, 239 U. S. 62, 36 S. Ct. 22, 60 L. Ed. 147.

The first of these cases involved the Allotment Act of 1885 (chapter 319, 23 Stat. 340). The following quotation from the opinion will show that it is not in point here: "We are of opinion that it was not necessary to allege or prove the residence of the appellee on the reservation at the time of the passage of the act of 1885, called the 'Allotment Act.' That act had reference, as its preamble states, to the 'confederated bands of Cayuse, Walla Walla and Umatilla Indians, residing upon the Umatilla reservation, in the state of Oregon.' It related to the residence of the bands as bands, and not as individual Indians, many of whom were residing off the particular reservation and yet within the country theretofore ceded to the United States by the treaty of 1855."

The case of Oakes v. United States, supra, held that the Nelson Act did not have

the effect of repealing the clause of the act of 1887 which gave to former tribal Indians, who had severed their tribal relations and taken on the manners and customs of civilization, the same rights in the tribal lands and property as tribal Indians were given under the Nelson Act. Fairbanks v. United States & Warren v. United States, supra, dealt also with the Nelson Act. The only light that the opinion sheds upon this case is the reference, on page 225, to the words in the act of 1887, "To each Indian located thereon one-eighth of a section of land," of which the court says:

"The conclusion that plaintiffs in error draw from that provision is that being on the reservation at the instant of time the act was passed is a necessary condition. But such conclusion misses the meaning of the word 'located.' Of itself it has no reference to time. It has reference entirely to place, and is used to designate upon what Indians the powers given by the act, when exercised, shall operate—that is, 'to each Indian located' on the reservation."

The question arose in that case in connection with Indian children born on the reservation after the Nelson Act was passed, and allotments authorized under it. It was held that these children were entitled to allotments, being located on the reservation at the time of selection, and being reservation Indians. The decision in the case of La Roque v. United States, supra, was to the effect that the heir of an Indian who was enrolled with the tribe, but who had died without making a selection, was not entitled to the allotment selected for the deceased Indian, and which he would have been entitled to under the Nelson Act had he lived, although a trust patent therefor had been issued in the deceased's name. In so holding, the court refers to the language of the act of 1887, "to any Indian located thereon," and in effect holds that an Indian who died after the passage of the act, without making a selection, was not such an Indian, and that "the terms of the general act contemplated only selections on the part of living Indians acting for themselves or through designated representatives."

No case has been cited, and we have been unable to find any, which holds that a tribal Indian, living apart from the tribe and off the reservation, is entitled to an allotment under section 1 of the act of 1887, and the language of that act seems to preclude such a holding.

[2] The certificate which the appellant received from Tom Wall in 1888 recited that the selection of the allotment by him was subject to the approval of the Secretary of the Interior. Under the decisions hereinbefore referred to, if this approval was nothing more than a ministerial act on the part of the Secretary of the Interior, then the appellant had an equitable title to this allotment, which would ripen into a legal title upon approval by the Secretary and the issuance of a patent. It appears from the record that, while allotments were made under the treaty of 1854, and patents issued thereon in conformity with the provisions of the act of 1887, no lands selected by the Indians under that act were allotted or set apart to them prior to the enactment of the Nelson Act, which provided a new method of dealing with the reservations of the Chippewas in the state of Minnesota and making allotments thereon. As has been pointed out, that act contained a provision for the protection of those who had allotments under the treaty of 1854 and the act of 1887. If Lemieux had an allotment at the time of the passage of the Nelson Act, he was protected. If he did not have one, then he has no vested interest in this land at the present time. The facts show that the selection of these lands by Lemieux as his allotment was not reported to the Secretary of the Interior, as provided by the act, and that the lands were never set apart for him. The trial court took the position that there was something more than a mere ministerial duty to be performed in connection with the approval or disapproval of his selection; that there was not only presented to the Secretary the question as to whether Lemieux was a member of the Fond du Lac Band, about which there seems to be no question, but also whether, with respect to the Fond du Lac reservation, he was "an Indian located thereon," and whether he was "ready, competent, and qualified" to receive an allotment. We also take this view of the matter.

[3] Only a short space of time elapsed between the selection of this land by the appellant and the passage of the Nelson Act. At any time before the right of Lemieux became vested in this land, Congress had the power to change the manner in which it should be allotted. Gritts v. Fisher, 224 U. S. 640, 32 S. Ct. 580, 56 L. Ed. 928; Cherokee Intermarriage Cases, 203 U. S. 76, 27 S. Ct. 29, 51 L. Ed. 96; Stephens v. Cherokee Nation, 174 U. S. 445, 19 S. Ct. 722, 43 L. Ed. 1041; Cherokee Nation v. Hitchcock, 187 U. S. 294, 23 S. Ct. 15, 47 L. Ed. 183; Wallace v. Adams, 204 U. S. 415, 27 S. Ct. 363, 51 L. Ed. 547; Chase v. United States (C. C. A.) 261 F. 833.

In the case of Chase v. United States

(C. C. A.) 261 F. 833, the court said: "If we should concede that Chase, Jr., had a floating right in the unallotted lands, that right did not attach to a particular tract of land until such tract of land had been definitely located, selected, and set apart to the allottee."

This court, in the case of Woodbury v. United States, 170 F. 302, 95 C. C. A. 498, held that an Indian entitled to an allotment of land on the White Earth reservation in Minnesota under the Act of April 28, 1904 (chapter 1786, 33 Stat. 539) providing for additional allotments to Chippewa Indians residing on the reservation, who left with the agent his selection and application for an allotment after the Secretary of the Interior had given his direction to the Indian agent in charge of the White Earth reservation to proceed with the work of making allotments under the statute and before the preliminary work necessary to determine the size of the allotments was completed and notice given that applications might be filed in accordance with the instructions and practice of the Department, but who died before such notice was given, acquired no vested right in the land selected which could pass to his heirs or legal representatives, his right being in the nature of a float, which was terminated by his death before the time when, in the orderly administration of the act, he could lawfully make his application and selection. While this case does not present identically the same situation as the case at bar, it is an authority for the proposition that, where the failure to secure an allotment was due to no fault on the part of public officers charged with the duty of making the allotment, no vested rights accrued by reason of the mere application or selection.

The case of United States v. Reynolds, 250 U. S. 104, 39 S. Ct. 409, 63 L. Ed. 873, holds that the trust period under a patent issued pursuant to a selection by an Indian allottee begins to run from the issuance of the patent, and not from the approval of the allotment. While not directly in point here, it is an intimation, at least, that the vesting of rights to lands in such a case does not take place upon the making of a selection or the issuance of a certificate of selection by an agent. Under the facts and circumstances of this case, and particularly in view of the fact that Peter Lemieux was not an Indian located upon the Fond du Lac reservation, no official neglect or misconduct can be attributed to the officers charged with the duty of making the allotment.

[4] In any event, the appellant has brought his suit too late. In his bill he states that on or about the 1st day of August, 1923, he employed an attorney to investigate as to his rights with reference to the allotment selected by him, that it was then found that the lands had been allotted to Shah-bah-yaust, and that that was the first time that he had any notice or knowledge that his allotment was not in full force and effect.

In Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836, it was said that a party who makes an appeal to the conscience of the chancellor should "set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer.". Richards v. Mackall, 124 U. S. 183, 8 S. Ct. 437, 31 L. Ed. 396; Felix v. Patrick, 145 U. S. 317, 12 S. Ct. 862, 36 L. Ed. 719; Schrimpscher v. Stockton, 183 U. S. 290, 22 S. Ct. 107, 46 L. Ed. 203; Bluejacket v. Ewert (C. C. A.) 265 F. 823.

In the opinion in the case of Moran v. Horsky, 178 U. S. 205, 20 S. Ct. 856, 44 L. Ed. 1038, appears this pertinent language: "One who, having an inchoate right to property, abandons it for fourteen years, permits others to acquire apparent title, and deal with it as theirs, and as though he had no right, does not appeal to the favorable consideration of a court of equity. * * * Felix v. Patrick, 145 U. S. 317 [12 S. Ct. 862, 36 L. Ed. 719]. * *. * There always comes a time when the best of rights will, by reason of neglect, pass beyond the protecting reach of the hands of equity, and the present case fully illustrates that proposition."

The facts in the case of Felix v. Patrick, supra, were that Sophia Felix, a half-breed Indian, was entitled, under an act of Congress, to scrip, which might be located upon unlocated land, but could not be assigned. She obtained such scrip to the amount of 480 acres in 1857. Some one obtained possession of such scrip to the extent of 120 acres and a blank power of attorney and quitclaim deed from her dated March 31, 1860. Two years thereafter these were turned over to Patrick, who located the scrip upon land of which he was in possession, but to which he had no title. He filled in the

name of William Ruth in the power of attorney, filled in his own name as grantee in the quitclaim deed, and a description of the property, and on July 25, 1863, procured from Ruth, under the power of attorney, a warranty deed to himself. On July 3, 1863, a patent to these lands had issued to Sophia Felix. Patrick remained in possession up to 1887, when this suit was brought. At that time a large part of the land had been platted as an addition to Omaha, and a large part sold to purchasers. The land was then of great value. The court decided that the quitclaim deed and power of attorney were "a palpable device to evade the law against the assignment of the scrip"; that Patrick took these lands as trustee for Sophia Felix, but that, regardless of the fact that she was a tribal Sioux Indian, incapable of bringing suit in the federal courts until the dissolution of her tribal relations in 1887, she could not, 28 years after parting with her scrip, be put in possession of this property, because of her laches.

Here no fraud is claimed by Lemieux. It is not a case of the overreaching of an Indian by a white man. There has been no attempt by any one to conceal anything. Lemieux says that he did not know that these lands had been allotted to another Indian until four or five years before he brought this suit. He claims to be the chief of the Fond du Lac Band of Chippewa Indians, and during his whole life he has lived within a short distance of the reservation. His brother, also living in Superior, received a patent pursuant to the treaty of 1854. His children, who lived with him or near him, were granted patents under the act of 1889. The certificate of selection which he held shows upon its face what it is, and that the selection must be approved by the Secretary of the Interior. It is hardly conceivable, under the circumstances, that he did not know that patents were being issued to others, and that none had been issued to him, or that these particular lands had been allotted to Shah-bah-yaust. All the indications are that Lemieux, at the time he made the selection, was interested in the timber; that that was all there was of substantial value in connection with the land at that time; that, after he received the money for the timber, he took no further interest in the land until 1923, when it may be fairly assumed, from the lapse of time and the development of the country, that the land had increased materially in value. There is nothing about his claim, after the lapse of a period of some 35 years, which appeals to a court of equity.

For the foregoing reasons, the decree of the lower court is affirmed.